UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BILLY D. "RUSTY" RHOADES III, an individual;<br>(2) MEGAN L. SIMPSON, an individual; and s<br>(3) MICHAEL S. HARRELL, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>(1) THE STATE OF OKLAHOMA, *ex rel.* GOVERNOR KEVIN STITT;<br>(2) THE STATE OF OKLAHOMA, *ex rel.* THE DEPARTMENT OF PUBLIC SAFETY;<br>(3) KEVIN STITT, an individual;<br>(4) CHIP KEATING, an individual;<br>(5) JASON NELSON, an individual; and<br>(6) JOE CLARO, an individual,<br><br>    Defendants. | Case No. CIV-20-761-G |

**DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

W. Kirk Turner, OBA No. 13791
Jacob S. Crawford, OBA # 31031
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone (918) 587-0000
Facsimile (918) 599-9317
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com

Ronald T. Shinn, Jr., OBA # 19569
Michael A. Duncan, OBA # 32382
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
211 North Robinson, 10th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**

October 6, 2020

In their Response, Plaintiffs raise for the first time an alternate basis for Plaintiff Rhoades' due process claim, citing Oklahoma's general removal statute, 74 Okla. Stat. § 2.  But as discussed below, 74 Okla. Stat. § 2 cannot save Plaintiff Rhoades' defective due process claim.  The Oklahoma Supreme Court has held that the Governor of Oklahoma has the exclusive authority to remove subordinate executive officers that he appoints without notice or hearing, if, in the Governor's sole discretion, he believes removal is warranted.  This Court is bound to respect the Oklahoma high court's rulings in this regard. *See Mitchell v. King*, 537 F.2d 385, 389 (10th Cir. 1976) (upholding New Mexico governor's removal of appointee pursuant to constitutional provision identical to 74 Okla. Stat. § 2, as interpreted by New Mexico's highest court).  But in any event, Rhoades' claim fails because the individual Defendants have qualified immunity. As for the remaining challenged claims, Plaintiffs fail to address the arguments in Defendants' Motion, and the claims should be dismissed.

## ARGUMENT

**I.    Rhoades fails to state a due process claim under § 1983.**

   **A. Oklahoma's general removal statute, 74 Okla. Stat. § 2, gives the Governor the exclusive authority and discretion to remove the DPS Commissioner without notice or hearing.**

Whether Rhoades has a right to a due process hearing before his employment can be terminated is a matter of federal law. But this question turns on the interpretation of Oklahoma law—specifically, whether 74 Okla. Stat. § 2 gives Rhoades a property interest in continued employment as DPS Commissioner. To resolve this question, the Court must look to how Oklahoma courts have interpreted and applied 74 Okla. Stat. § 2.

1

An analysis of Oklahoma authorities confirms that, absent specific statutory language to the contrary, the general removal statute (74 Okla. Stat. § 2) grants the Governor the exclusive and unfettered discretion to remove subordinate executive officers he appoints without notice or hearing and that the courts are powerless to second-guess the Governor's exercise of this broad discretion.

This rule was first adopted in *Cameron v. Parker*, where the Oklahoma territorial court upheld the territorial governor's removal of the superintendent of public instruction and *ex officio* auditor without notice or hearing.[1] At issue in *Cameron* was the predecessor statute to 74 Okla. Stat. § 2 (St. 1893, § 5976), which is identical to its modern counterpart. Noting "[t]he authorities are all to the effect that a grant of the power to remove, either for cause or at discretion, carries with it the exclusive power to hear and decide," the Court held the governor's exercise of his statutory discretion to remove for cause was not reviewable by the courts "with respect to the cause, or to its sufficiency or existence, or otherwise." *Id.* at 37.

The *Cameron* rule was later applied by the Oklahoma Supreme Court in *Bynum v. Strain*, where the Court upheld the Governor's summary removal of a bank commissioner without notice or hearing. *See* 218 P. 883 (Okla. 1923).[2] The Court held that because the

---

[1] *See Cameron v. Parker*, 38 P. 14, 17 (Okla.Terr. 1894) (quoting the removed officer's pleadings that he "had no notice of any further action or proceedings" by the governor against him and that "at no time had he a hearing upon said alleged charges" before the governor "or any opportunity to appear and present evidence or defend himself against the same.")

[2] In *Bynum*, the Governor did not rely on the general removal statute (74 Okla. Stat. § 2)

2

statute gave the removal power to the Governor without imposing any limitations on his use of that power, the judiciary had no authority to review the Governor's decision to remove the bank commissioner, including the sufficiency of "cause" or the manner of removal. *Id*. at 885.³

In explaining its decision, the *Bynum* Court reasoned:

> [A]n appointee to an appointive position in a subordinate branch of the special sphere of duties and responsibilities of the Chief Executive . . . is selected by the Chief Executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public, and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the Chief Executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the Chief Executive, and, in the absence of express authority, the judiciary has nothing to do with the Chief Executive's judgment, conscience, sense of duty, or responsibilities.

*Id*. at 889.

Mindful of these considerations, the *Bynum* Court declined to interfere in the Governor's exercise of his executive authority and dismissed the former banking commissioner's lawsuit. *Id*. at 891.

---

but instead the specific banking statute, which allowed the Governor to remove the commissioner "for cause." Given the similarities between the two statutes, however, the Court's reasoning in *Bynum* applies with equal force to this case.

³ *Id*. at 890 ("The Legislature created the department in question, created the appointive position in question, [gave] the Governor the appointing power and authorized the Governor to remove the appointee for cause, and furthermore . . . authorized the Governor to determine the sufficiency of cause. . . [t]his takes it away from the courts." (emphasis added).

3

The *Bynum* decision remains precedential in determining the scope of the Governor's removal powers. In *Hall v. Tirey*, the Court distinguished the *Bynum* decision from the facts in that case to conclude that the removal of a member of the State Board for Property and Casualty Rates pursuant to 74 Okla. Stat. § 2 was subject to judicial review. *Hall v. Tirey*, 501 P.2d 496, 501 (Okl. 1972). The *Hall* Court reasoned that the judicial non-interference rule in *Bynum* was limited to cases involving the removal of appointed officers subordinate to the Governor whose principal duties are "executive" in nature, as opposed to "quasi-legislative" or "quasi-judicial." *Id*. Holding the "State Board of Property and Casualty Rates is primarily a quasi-legislative and quasi-judicial administrative body," the *Hall* Court determined that the rule in *Bynum* was therefore inapplicable. *Id.*

Here, there can be little doubt that the rule in *Bynum* (even as narrowed by *Hall*) applies to Rhoades' removal as DPS Commissioner. Like the banking commissioner in *Bynum*, the DPS Commissioner is subordinate to the Governor and his principal duties are executive in nature. The enabling legislation for DPS confirms that the "[t]he Governor shall be the chief officer of the Department of Public Safety and the Commissioner of Public Safety shall execute the lawful orders of the Governor and shall be responsible to him for the operation and administration of said Department." 47 Okla. Stat. § 2-101. The DPS Commissioner's duties principally consist of enforcing the Oklahoma Highway Safety Code and all laws regulating the operation of vehicles or the use of the highways. *See* 47 Okla. Stat. § 2-108(A); *see also* Okla. Op. Atty. Gen. No. 2006-25 (July 5, 2006). In this capacity, the DPS Commissioner's role is executive in

4

nature and subordinate to Oklahoma's chief executive, the Governor, who under the Oklahoma Constitution is charged with "caus[ing] the laws of the State to be faithfully executed." OK Const. Art. 6 § 8.

While the Oklahoma Legislature has the authority to limit the Governor's broad discretion and power to remove appointees, the Legislature chose not to do so here. The DPS enabling legislation does not, for example, set a fixed term of office for the DPS Commissioner. Nor does it enumerate causes for removal, or select an agency independent from the Governor to hear and determine the sufficiency of the causes. *See Wentz v. Thomas*, 15 P.2d 65, 86 (Okla. 1932) McNeill, J. (specially concurring) (listing the ways the Legislature may, if it chooses, properly restrict the Governor's discretion to remove executive officers for reasons of policy). Nor does it contain any other language that might manifest a legislative intent to limit the Governor's power of removal.[4] The absence of such limiting language reflects a clear legislative intent not to restrict the Governor's broad power of removal of subordinate officers under 74 Okla. Stat. § 2 and *Bynum* in the case of the DPS Commissioner.

Applying the foregoing Oklahoma authorities here, Governor Stitt had exclusive discretion to determine whether sufficient cause existed to terminate Rhoades' employment. *See Cameron*, 38 P. at 17; *Bynum*, 218 P. at 891. Moreover, he had the

---

[4] *Contrast* 47 Okla. Stat. § 2-101 *with* 68 Okla. Stat. § 102 ("The members of the Tax Commission shall not be subject to removal from office at the will and pleasure of the Governor, but may be removed only for cause" *and* 29 Okla. Stat. § 3-104 (stating the Director of Wildlife Conservation "shall be removed only for cause and after public hearing by the Commission").

power to summarily remove Rhoades as DPS Commissioner without notice or hearing and such removal is not subject to judicial review.

In evaluating Rhoades' due process claim, this Court is obliged to defer to the Oklahoma Supreme Court's decisions that the Governor may remove subordinate executive officials without notice or hearing. *See Mitchell v. King*, 537 F.2d 385, 389 (10th Cir. 1976) ("[T]he interpretation and construction of state statutes (and constitutions) by the highest courts of the states will be followed by the federal courts unless those interpretations are inconsistent with fundamental principles of liberty and justice.").

In *Mitchell*, a former member of the board of regents of the New Mexico museum filed suit alleging the governor removed him as a regent without notice or hearing. *Id.* at 386-387. The governor removed the regent for "neglect of duty and malfeasance," pursuant to Article V, Section 5 of the New Mexico Constitution (*id.*), which provided at the time that the governor could "remove any officer appointed by him for incompetency, neglect of duty or malfeasance in office." *Id.* at 389.[5] The former regent brought a Section 1983 claim against the governor alleging, among other things, that his summary dismissal violated his right to due process under the U.S. Constitution. *Id.* at 387. Dismissing the regent's due process claim, the trial court cited a New Mexico Supreme Court decision interpreting the constitutional provision to give the governor discretion to

---

5 This constitutional provision is identical to 74 Okla. Stat. § 2, which provides "The Governor shall have power to remove any officers appointed by him, in case of incompetency, neglect of duty, or malfeasance in office."

summarily remove appointed officials "without hearing or notice," and that held the governor's exercise of this discretion was not subject to judicial review. *Id*. at 389. The Tenth Circuit affirmed the dismissal, holding that the New Mexico constitutional provision, as construed and interpreted by New Mexico's highest court, allowed the governor to remove the regent without notice or hearing, foreclosing his due process claim. *Id*.

According to *Mitchell*, the Oklahoma Supreme Court's interpretation of 74 Okla. Stat. § 2 as reflected in *Bynum* and related cases, similarly forecloses Rhoades' due process claim. Because Oklahoma law allows Governor Stitt to remove Rhoades as DPS commissioner for cause, as determined in his sole discretion, and without affording notice or hearing, Rhoades' Section 1983 due process claim should be dismissed. *See id*.

## B. Even if the Court determines that 74 Okla. Stat. § 2 grants Rhoades a right to due process, that right was not "clearly established" at the time of his termination, and thus the individual Defendants have qualified immunity.

Defendants contend the authorities cited above establish that 74 Okla. Stat. § 2 does *not* give Rhoades a right to due process. But if the Court is unpersuaded, these authorities at least cast substantial doubt on the existence of such a right. In light of the Tenth Circuit's decision in *Mitchell* and the Oklahoma Supreme Court's decision in *Bynum* and related cases, it cannot be said that any right to due process conferred on Rhoades by 74 Okla. Stat. § 2 was "clearly established," or "beyond debate," when he was terminated. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). As such, the individual Defendants are entitled to qualified immunity, which is an independent and

sufficient basis to dismiss Rhoades' due process claim based on 74 Okla. Stat. § 2.

## II. Rhoades' and Harrell's due process claims brought under the Oklahoma Constitution lack any legal support.

In their Response, Plaintiffs double-down on the Oklahoma Supreme Court's decision in *Bosh* as the basis for their purported due process claims under the Oklahoma Constitution. Yet, Plaintiffs concede they can point to no authority (state or federal) extending *Bosh* to recognize a private right of action for the employment-related claim Plaintiffs are asserting in this case. This Court should decline to recognize a private cause of action under circumstances where the Oklahoma Supreme Court has not done so and has not provided any indication that it would if given the opportunity. *Bruning v. City of Guthrie, Okla.*, 2015 WL 4925995, at *8 (W.D.Okla.,2015) ("Federal courts are, in general, reluctant to expand state law in the absence of clear guidance from the state's highest court.") (citing *Schrock v. Wyeth Inc.*, 727 F.3d 1273, 1284 (10th Cir.2013).

Tellingly, Plaintiffs fail to address that this Court has already declined to recognize the precise state-law claim that Plaintiffs are asserting here. *See Earles v. Cleveland*, 418 F. Supp. 3d. 879, 890-91 (W.D. Okla. 2019) (dismissing plaintiff's due process claim under the Oklahoma Constitution based on her summary termination from employment because the Oklahoma Constitution does not create a private cause of action for such a claim) (DeGiusti, J.).

Furthermore, "*Bosh*'s rationale is limited to those circumstances where a plaintiff 'has no other avenue' for recovering for his or her claimed constitutional injuries." *Id*. (quoting *Bruning*, 2015 WL 4925995, at *8). Here, Rhoades and Harrell have an avenue

to vindicate their supposed due process injuries—by asserting a Section 1983 claim for violation of their due process rights under the U.S. Constitution, *which they have done*. This alone is fatal to their purported *Bosh* claims. *See id*. at 891. Moreover, as noted in Defendants' Motion, Plaintiffs could have asserted a due process claim against the State of Oklahoma pursuant to the OGTCA; they chose not to. Plaintiffs' due process claims under the Oklahoma Constitution should be dismissed.

> **III.  Plaintiffs' wrongful termination cause of action is premised on reporting government misconduct and therefore falls squarely under the Whistleblower Act, which precludes their claim.**

Plaintiffs contend that the Whistleblower Act does not preclude their wrongful termination claim because they did not "report" the alleged misconduct involving the civil asset forfeiture program and corruption within the Oklahoma Highway Patrol. It is unclear what sort of "reporting" Plaintiffs would consider sufficient to fall under the Act. But the simple fact is the Complaint plainly alleges that Plaintiffs were terminated in "retaliation" for "their efforts to *expose* corruption by people associated with the OHP and/or DPS." Compl. at ¶¶110, 162. Those efforts included "reporting . . . violation[s] of . . . state or federal law" and "discussing" purported government misconduct within DPS with "persons in a position to investigate or initiate corrective action." 74 Okla. Stat. § 840-2.5(B)(3) and (B)(4).

Plaintiffs explicitly allege that they provided information to "Troop Z," the internal affairs division of DPS, for it to investigate the problems with the civil asset forfeiture program (Compl. at ¶52) and the blackmail attempt by Captain Troy German (Compl. at ¶63). The Complaint is likewise replete with allegations that Plaintiffs

9

discussed the operations of DPS and the purported misconduct with each other and others within the Department. *See*, *e.g.*, Compl. at ¶¶51, 54, 75. The Complaint even suggests one or more of Plaintiffs reported Captain German's alleged blackmail attempt to Governor Stitt, because it is alleged that Stitt ordered an independent investigation into the allegations after Plaintiffs reported the allegation to Troop Z. *Id*. at ¶76. The activities of Plaintiffs, as pleaded in the Complaint, fall squarely within the enumerated activities protected by the Whistleblower Act. As set forth in Defendants' Motion (which Plaintiffs failed to rebut), the Whistleblower Act precludes Plaintiffs' wrongful termination claim.

**IV.     Plaintiffs fail to plausibly allege Keating, Nelson, and Claro acted with malicious intent and therefore the tortious interference claim should be dismissed.**

The Response does not address a critical gap in Plaintiffs' tortious interference claim: that the Complaint fails to plausibly allege that Keating, Nelson, or Claro acted with malicious intent and, more specifically that they acted to further their own private interests, as opposed to the interests of their employer. *See Kinsey v. Cable Meat Center, Inc.*, CIV-07-0704-HE, 2007 WL 9711147, at *2 (W.D. Okla. Oct. 10, 2007). Even in a light most favorable to Plaintiffs, the Complaint does not reasonably suggest Keating, Nelson, or Claro were acting in furtherance of their own private interests. Because malicious intent is an essential element of Plaintiffs' tortious interference claim, the claim should be dismissed. Alternatively, if the Court determines the defects in Plaintiffs' tortious interference claim may be remedied through amendment, Defendants do not oppose such amendment, provided that Defendants be allowed to move to dismiss the amended claim if Plaintiffs again fail to adequately plead the same.

10

## **CONCLUSION**

For the foregoing reasons, the challenged causes of action should be dismissed.

        Respectfully submitted,

        */s/ Michael A. Duncan*
        W. Kirk Turner, OBA No. 13791
        Jacob S. Crawford, OBA # 31031
        MCAFEE & TAFT, A PROFESSIONAL CORPORATION
        Two West Second Street, Suite 1100
        Tulsa, Oklahoma  74103
        Telephone (918) 587-0000
        Facsimile (918) 599-9317
        kirk.turner@mcafeetaft.com
        jake.crawford@mcafeetaft.com

        Ronald T. Shinn, Jr., OBA # 19569
        Michael A. Duncan, OBA # 32382
        MCAFEE & TAFT, A PROFESSIONAL CORPORATION
        211 North Robinson, 10th Floor
        Oklahoma City, Oklahoma  73102
        Telephone:  (405) 235-9621
        Facsimile:  (405) 235-0439
        ron.shinn@mcafeetaft.com
        alex.duncan@mcafeetaft.com

        **ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2020, I transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Dustin J. Hopson, Esq.
Hopson Legal, LLC
512 NW 12th Street
Oklahoma City, OK  73103
dustin@hopsonlawfirm.com

**Attorney for Plaintiffs**

                                        */s/ Michael A. Duncan*