# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) BILLY D. "RUSTY" RHOADES III, an individual; | ) | |
| (2) MEGAN L. SIMPSON, an individual; and | ) | |
| (3) MICHAEL S. HARRELL, an individual, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. CIV-20-761-G |
| v. | ) | |
| | ) | |
| (1) THE STATE OF OKLAHOMA, *ex rel.* GOVERNOR KEVIN STITT; | ) | |
| (2) THE STATE OF OKLAHOMA, *ex rel.* THE DEPARTMENT OF PUBLIC SAFETY; | ) | |
| (3) KEVIN STITT, an individual; | ) | |
| (4) CHIP KEATING, an individual; | ) | |
| (5) JASON NELSON, an individual; and | ) | |
| (6) JOE CLARO, an individual, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' SECOND PARTIAL MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(B)(6)

W. Kirk Turner, OBA No. 13791
Jacob S. Crawford, OBA # 31031
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
Two West Second Street, Suite 1100
Tulsa, Oklahoma  74103
Telephone (918) 587-0000
Facsimile (918) 599-9317
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com

Ronald T. Shinn, Jr., OBA # 19569
Michael A. Duncan, OBA # 32382
MCAFEE & TAFT
A PROFESSIONAL CORPORATION
211 North Robinson, 10th Floor
Oklahoma City, Oklahoma  73102
Telephone:  (405) 235-9621
Facsimile:  (405) 235-0439
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**

December 7, 2020

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ....................................................................................................... 8

    I.    Rhoades Fails to State a Claim for Deprivation of His Due Process Rights Under § 1983. ......................................................... 8

        A.    Rhoades' Due Process Claim Fails Because He Cannot Allege a Property Interest in Continued Employment at DPS .............................................................................................. 8

        B.    Rhoades' Due Process Claim Based on 47 Okla. Stat. § 2-102(D) Fails Because the Individual Defendants Have Qualified Immunity. ..................................................................... 11

    II.    Rhoades and Harrell Fail to State a Due Process Claim Under the Oklahoma Constitution ...................................................................... 14

    III.    Plaintiffs Fail to State a Claim for Wrongful Termination Under the Oklahoma Governmental Tort Claims Act. .......................... 15

    IV.    Plaintiffs Fail to State a Claim of Tortious Interference. .. ....................... 20

        A.    Plaintiffs Have Not Sufficiently Pleaded How Keating, Nelson, or Claro Interfered with Plaintiffs' Employment ............... 20

        B.    Plaintiffs Have Not Adequately Pleaded Keating and Nelson Acted Maliciously and Wrongfully -- i.e., to Advance Their Own Personal Interests. .......................................... 21

    V.    Plaintiffs Fail to State a Due Process Claim Against Stitt Based on His Alleged Statements to the Press Regarding Plaintiffs' Terminations. .................................................................................. 24

CONCLUSION ................................................................................................... 26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angove v. Williams-Sonoma, Inc.*,
  70 Fed.Appx. 500 (10th Cir. 2003) ..................................................................... 20, 21

*Barrios v. Haskell County Pub. Facilities Auth.*,
  432 P.3d 233 (Okla. 2018) ....................................................................................... 15

*Batton v. Mashburn*,
  107 F.Supp.3d 1191 (W.D. Okla. 2015) ............................................................... 23, 25

*Benedix v. Indep. Sch. Dist. No. I-007 of Oklahoma Cty., Okla.*,
  No. CIV-08-1060-D, 2009 WL 975145 (W.D. Okla. Apr. 9, 2009) .......................... 19

*Bosh v. Cherokee Cty. Bldg. Auth.*,
  305 P.3d 994 (Okla. 2013) ................................................................................. 14, 15

*Bunger v. Univ. of Oklahoma Bd. of Regents*,
  95 F.3d 987 (10th Cir. 1996) ..................................................................................... 9

*Burk v. K–Mart Corp.*,
  1989 OK 22, 770 P.2d 24 ............................................................................. 16, 17, 18

*Bynum v. Strain*,
  218 P. 883 (Okla. 1923) ........................................................................................... 10

*Cameron v. Parker*,
  38 P. 14 (Okla.Terr. 1894) ....................................................................................... 10

*Coleman v. Utah State Charter Sch. Bd.*,
  673 Fed. Appx. 822 (10th Cir. 2016) .......................................................................... 9

*Conaway v. Smith*,
  853 F.2d 789 (10th Cir. 1988) .................................................................................... 8

*Cummings v. Dean*,
  913 F.3d 1227 (10th Cir. 2019) ................................................................................ 12

*Darr v. Town of Telluride, Colo.*,
  495 F.3d 1243 (10th Cir. 2007) ................................................................................ 10

*Davidson v. Conine*,
 No. CIV-18-836-SLP, 2019 WL 2524839 (W.D. Okla. June 18, 2019) .................... 20

*Derda v. City of Brighton, Colo.*,
 53 F.3d 1162, 1166 (10th Cir. 1995) .................................................................... 13, 14

*Dixon v. Oklahoma Bd. of Veterinary Med. Examiners*,
 CIV-06-1003-M, 2009 WL 1473973 (W.D. Okla. May 26, 2009) ........................... 18

*Duncan v. Gunter*,
 15 F.3d 989 (10th Cir. 1994) ............................................................................... 13, 14

*Earles v. Cleveland*,
 418 F.Supp.3d 879 (W.D. Okla. 2019) .......................................................... 14, 15, 25

*Fox-Rivera v. Colorado Dept. of Public Health & Env.*,
 610 Fed.Appx. 745 (10th Cir. 2015) ........................................................................... 24

*Goff v. Hukill*,
 No. 08-CV-71-TCK-FHM, 2010 WL 2595785 (N.D. Okla. June 24,
 2010) ........................................................................................................................... 21

*Gonzales v. City of Albuquerque*,
 701 F.3d 1267 (10th Cir. 2012) .................................................................................... 9

*Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cty.*,
 949 F.Supp.2d 1104 (W.D. Okla. 203) ....................................................................... 19

*Khave v. Norman, OK (State) VA Center*,
 CIV-13-985-M, 2014 WL 2136027 (W.D. Okla. May 22, 2014) .............................. 18

*Kinsey v. Cable Meat Center, Inc.*,
 CIV-07-0704-HE, 2007 WL 9711147 (W.D. Okla. Oct. 10, 2007) ........................... 22

*Lane v. Town of Dover*,
 761 F.Supp. 768 (W.D. Okla. 1991) .............................................................................. 9

*McCrady v. Oklahoma Dep't. of Pub. Safety*,
 2005 OK 67, 122 P.3d 473 ......................................................................................... 16

*Mullenix v. Luna*,
 136 S.Ct. 305 (2015) .................................................................................................. 11

*Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*,
 CIV-18-707-G, 2019 WL 4752269 (W.D. Okla. Sept. 30, 2019) .............................. 15

*Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health and Substance
    Abuse Serv*s.,
    683 Fed.Appx 691 (10th Cir. 2017) ..................................................................... 18, 19

*Schwartz v. Booker*,
    702 F.3d 573 (10th Cir. 2012) ............................................................................... 11

*Shephard v. CompSource Okla.*,
    2009 OK 25, 209 P.3d 288 ............................................................................*passim*

*Southeast Kansas Community Action Program Inc. v. Sec. of Agriculture of
    U.S.*,
    967 F.2d 1452 (10th Cir. 1992) ......................................................................... 24, 25

*Sydnes v. U.S.*,
    523 F.3d 1179 (10th Cir. 2008) ............................................................................. 20

*Toone v. Wells Fargo Bank, N.A.*,
    716 F.3d 516 (10th Cir. 2013) ................................................................................ 7

*Tuffy's, Inc. v. City of Oklahoma City*,
    2009 OK 4; 212 P.3d 1158 ............................................................................... 21, 22

*Wilson v. City of Tulsa*,
    2004 OK CIV APP 44 ............................................................................................. 21

*Workman v. Jordan*,
    32 F.3d 475 (10th Cir. 1994) ................................................................................. 24

## Statutes

47 Okla. Stat. § 2-102 ....................................................................................*passim*

47 Okla. Stat. § 2-105 .............................................................................................. 6

51 Okla. Stat. § 152 *et seq* ........................................................................ 15, 19, 23, 24

74 Okla. Stat. § 2 ............................................................................................. 10, 13

74 Okla. Stat. § 840–2.5 *et seq* ....................................................................*passim*

## Other Authorities

Okla. Admin. Code 455:10-9-2; 10-15–1 ............................................................... 17

Oklahoma Constitution Art. II, Section VII ........................................................... 15

In accordance with Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiffs' First, Second, Fourth, Fifth, Sixth, and Seventh Causes of Action alleged in the Amended Complaint.[1]  In support, Defendants submit the following brief.

## PRELIMINARY STATEMENT

The Amended Complaint fails to rectify the original Complaint's fatal flaws. As a result, Plaintiffs' repleaded claims must be dismissed. The Amended Complaint adds a new cause of action against Defendant Stitt in his individual capacity for alleged statements to the press regarding Plaintiffs' terminations.  This new cause of action is similarly defective and must be dismissed.

Plaintiffs are former at-will employees of the Oklahoma Department of Public Safety ("DPS") who were allegedly terminated in 2019 in retaliation for reporting government misconduct.  In their Amended Complaint, Plaintiffs allege causes of action for violations of due process under Section 1983 and the Oklahoma Constitution, wrongful termination, and tortious interference. The problems with these causes of action are myriad:

First, Plaintiff Rhoades' Section 1983 due process claim fails because he was an at-will employee and he has not plausibly alleged a property interest in continued employment.  Rhoades alleges an Oklahoma statute confers on him a property interest in continued employment because it purportedly guarantees him the right to return to his previous position at the Department upon completion of his duties as Commissioner.  But

---

[1] Defendants do not move to dismiss Plaintiff Harrell's Section 1983 claim for alleged due process violation set forth in the Third Cause of Action.

1

this statute disqualifies DPS employees that have been "terminated." Since Rhoades himself alleges that he was terminated by Defendants, his due process claim fails under the plain language of the statute upon which he relies. Further, if this Court determines Rhoades has stated a plausible right to due process based on the statute in question, that right was not "clearly established" at the time of the alleged violation and therefore the individual Defendants have qualified immunity.

As for Rhoades' and Harrell's due process claims under the Oklahoma Constitution, Oklahoma law does not recognize a private right of action for such an alleged violation. Accordingly, Rhoades' and Harrell's state-law due process claims must also be dismissed.

With respect to Plaintiffs' wrongful termination claim pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), their claim is precluded by the Oklahoma Whistleblower Act, which was enacted to protect state employees from disciplinary action, including termination, for reporting government misconduct. Plaintiffs' allegations of retaliation for reporting and investigating unlawful activities and corruption at DPS fall squarely within the Whistleblower Act. Because the Whistleblower Act provides an adequate remedy for the public policy concerns raised by Plaintiffs, their wrongful termination claim must be dismissed as a matter of clear Oklahoma law. *See Shephard v. CompSource Okla.*, 2009 OK 25, ¶ 4, 209 P.3d 288, 290-91. In addition, the State's decision to terminate Plaintiffs (whom the Amended Complaint identifies as managerial employees at DPS) falls within the discretionary function exemption of the OGTCA, which is another reason to dismiss their wrongful termination claim.

2

Plaintiffs also fail to plausibly allege a tortious interference claim against Defendants Keating, Nelson, and Claro.  They do not, for example, allege how each of them was involved in the decision to terminate Plaintiffs. Further, Plaintiffs fail to allege in a non-conclusory manner any facts plausibly suggesting that Keating and Nelson interfered with Plaintiffs' employment out of *malice*—i.e., for their own personal gain—a required element of a tortious interference claim under Oklahoma law.

Finally, Plaintiffs allege a new Section 1983 due process claim against Governor Stitt based on alleged statements he made to the press regarding their terminations.  This claim must be dismissed because under Tenth Circuit precedent, the alleged statements— which at most criticize Plaintiffs for unsatisfactory job performance—do not implicate a liberty interest that that would entitle Plaintiffs to due process.

For these reasons and the additional reasons that follow, Defendants' Motion should be granted and the challenged causes of action dismissed.

## STATEMENT OF FACTS

The following statement is taken from the allegations of facts (but not conclusory statements) pleaded in the Amended Complaint, which are assumed to be true solely for purposes of this motion to dismiss.

Plaintiffs allege they are all former employees of DPS.  At all times pertinent to the Amended Complaint, Plaintiff Rusty Rhoades was the Commissioner of DPS, Plaintiff Megan Simpson was General Counsel for DPS, and Plaintiff Michael Harrell was the Chief of Patrol of the Oklahoma Highway Patrol ("OHP"). Am. Compl. at ¶¶26-28.  Defendant Stitt was elected and took office as Governor of the State of Oklahoma in

January 2019.  Upon taking office, Stitt appointed Defendant Keating as Secretary of Public Safety. At all times pertinent to Plaintiffs' allegations, Defendant Nelson was the Deputy Cabinet Secretary for Public Safety under Keating, and Defendant Claro was a DPS attorney working under Plaintiff Simpson. *Id*. at ¶¶29-32.

The Amended Complaint alleges that in 2018, Plaintiffs learned of serious concerns about DPS' civil asset forfeiture program (*Id*. at ¶¶33-55), including "significant ethical and legal issues" with the program (*Id*. at ¶¶36) and "serious legal deficiencies that violated the constitutional rights of citizens of the United States and the State of Oklahoma." *Id*. at ¶38.   Among these alleged violations was a purported "failure to effectuate proper service in the majority of asset forfeiture cases filed by DPS." *Id*. at ¶45. Plaintiffs and others within DPS allegedly took action to attempt to investigate and correct these problems with the civil asset forfeiture program.  *Id*. at ¶¶33-55. Plaintiffs allege that Defendant Claro was implicated in the problems with the forfeiture program and attempted to block Plaintiffs' efforts to investigate those problems. *Id*. at ¶¶46, 53.

Plaintiffs separately allege that in the fall of 2018, Plaintiff Rhoades was blackmailed by Captain Troy German of the OHP in an attempt to be promoted. *Id*. at ¶¶56, 61.  This purported blackmail attempt allegedly prompted an internal investigation of OHP by "Troop Z" (*Id.* at ¶¶64-75) and Defendant Stitt to allegedly order an independent investigation into German and leadership of OHP.  *Id*. at ¶76.   These investigations allegedly revealed misconduct by several members of OHP, including German, which led the State of Oklahoma to file criminal charges against him, though those charges were later dismissed.  Plaintiffs allege that after the dismissal, Plaintiffs

4

continued their investigation into wrongdoing by leadership of OHP. *Id*. at ¶95.

On August 17, 2019, Defendant Keating allegedly e-mailed Plaintiffs and other employees of DPS and ordered an end to the investigation into corruption at OHP. *Id*. at ¶96. Later, on August 28, 2019, Plaintiff Simpson allegedly terminated Defendant Claro in part due to his "mismanagement and/or covering up mismanagement of the civil asset forfeiture program." *Id*. at ¶98. In response, Claro allegedly told a human resources employee at DPS that "I'll be back," "What goes around comes around," and "There are other unapproved terminations the governor doesn't know about." *Id*. at ¶99. On August 30, 2019, Defendant Keating allegedly accused Plaintiffs and DPS of not meeting the State of Oklahoma's Real ID benchmarks. *Id*. at ¶100.

Three days later, on September 2, 2019, Defendant Nelson had a conference call with Plaintiffs and notified them that they would "no longer be employed by DPS and/or the State of Oklahoma." *Id*. at ¶106. Prior to this call, Plaintiffs' credentials to enter DPS facilities and access the DPS computer system were allegedly deactivated, indicating that they had been "involuntarily terminated" before the September 2, 2019 call with Nelson. *Id*. at ¶¶104-105.

The Amended Complaint alleges that when Plaintiff Rhoades was terminated, he was not given the option of returning to his prior position at DPS, as allegedly required by 47 Okla. Stat. § 2-102(D), which states:

> "Any employee of the Department of Public Safety appointed to the position of Commissioner shall have the ability to return to the previous position of the employee without any loss of rights, privileges or benefits immediately upon completion of the duties as Commissioner, provided the employee is not otherwise disqualified due to disciplinary reasons,

**termination of employment** or inability to effectively lead the agency."

47 Okla. Stat. § 2-102(D) (emphasis added); Compl. at ¶¶126-128.

The Amended Complaint further alleges that Plaintiff Rhoades was not afforded notice or an opportunity to respond before he was terminated and foreclosed from returning to his prior position at the Department. *Id*. at ¶116.  In addition, the Amended Complaint alleges that after Plaintiff Harrell was terminated, he was not given the opportunity to return to his prior position at OHP in purported violation of 47 Okla. Stat. § 2-105(A)(1), and was not given notice or an opportunity to be heard.  *Id*. at ¶¶129-131.

Plaintiffs allege the reason they were terminated is "in substantial part [because of] their efforts to comply with their statutory duties and police power under the statutes governing DPS and their efforts to expose corruption by people associated with the OHP and/or DPS under those statutes, as well as the criminal laws of the State of Oklahoma." *Id*. at ¶122.  Plaintiffs further allege that their terminations were in violation of "public policy." *Id*. at ¶124.  Although never explicitly stated, these allegations plainly reference Plaintiffs' alleged efforts to investigate and correct issues with DPS' civil asset forfeiture program and the investigation into corruption and misconduct in the ranks of OHP, as outlined above.  While Plaintiffs do not allege the reason(s) they were given for why they were terminated, they suggest it was a failure to meet the State's benchmarks for implementing the federal Real ID law.  Plaintiffs allege any concern over failure to meet these benchmarks is "pretextual for the actual unlawful reasons for their termination"— again alluding to their alleged efforts with respect to the civil asset forfeiture program and OHP corruption. *Id.* at ¶101.

On October 7, 2019, Plaintiffs filed a tort claim notice pursuant to the OGTCA notice requirements. *Id*. at ¶132. The notice, which is incorporated by reference in the Amended Complaint[2], alleges that "[i]n response to [Plaintiffs'] efforts to investigate, remedy, discipline, and prosecute unlawful behavior within the Department, Claimants were subjected to hostile and retaliatory actions on behalf of officials of the State of Oklahoma," which included the termination of Plaintiffs' employment at DPS. Attached as Ex. 1 to the Declaration of Michael A. Duncan (the "Duncan Declaration").

The Amended Complaint repleads the six causes of action contained in the original petition filed in state court (that was later removed to federal court). The Amended Complaint contains a new Seventh Cause of Action alleging that after their terminations, Defendant Stitt[3] "published statements that impugned Plaintiffs' good name, reputation, honor, or integrity by asserting that Plaintiffs' failed to perform the duties of their job and/or failed to meet the requirements of the REAL ID act in the execution of their job while employed with DPS." Am. Compl. ¶¶ 185-198. The Amended Complaint references only two such statements by Gov. Stitt, printed in the newspaper *The Oklahoman* on September 3rd and September 8th of 2019. *Id*. at ¶¶ 116-17. Those published statements are incorporated by reference into the Amended Complaint

---

[2] For purposes of a motion to dismiss, "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

[3] The Amended Complaint refers to "Defendants" publishing statements but the Seventh Cause of Action is only against Defendant Stitt. Additionally, the Amended Complaint only references statements made by Stitt to *The Oklahoman* newspaper.

and thus may properly be considered by the Court for purposes of this Motion.  The news

articles are attached as Ex. 2 to the Duncan Declaration.4

<u>ARGUMENT</u>

**I.      Rhoades Fails to State a Claim for Deprivation of His Due Process Rights Under § 1983.**

**A.  Rhoades' Due Process Claim Fails Because He Cannot Allege a Property Interest in Continued Employment at DPS.**

Rhoades alleges he was deprived due process when terminated as Commissioner

and was not allowed to return to his prior position at DPS.  Because Rhoades has failed to

plausibly allege a property interest in continued employment at DPS, his due process

claim should be dismissed.

Rhoades alleges he was deprived due process when he was terminated as

Commissioner of DPS and not given the option to return to his prior position within the

Department.  Am. Compl. ¶¶135-144. Rhoades alleges that "upon completion of [his]

duties as Commissioner," 47 Okla. Stat. § 2-102(D) gives him the right to return to his

prior position at DPS, which he occupied before his appointment to Commissioner.  *Id*. at

¶¶126, 137.  The Amended Complaint does not allege what due process Rhoades claims

he should have received, but presumably he contends he was entitled to pre-termination

notice and a hearing. *See Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)

("Procedural due process requires a pretermination hearing where liberty or property

interests protected by the Fourteenth Amendment are implicated.").

---

4 The news articles are available online at:
https://oklahoman.com/article/5640247/public-safety-commissioner-replaced  and
https://oklahoman.com/article/5640593/real-id-compliance-coming-stitt-vows.

To state a due process claim under §1983, Rhoades must plausibly allege he had a property interest in continued employment at DPS. *See Coleman v. Utah State Charter Sch. Bd.*, 673 Fed. Appx. 822, 827–28 (10th Cir. 2016) ("A plaintiff must show a right to continued employment to establish a property interest in public employment that due process protects."). "A property interest in the employment context consists of a 'legitimate expectation in continued employment.'" *Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1271 (10th Cir. 2012). This "legitimate expectation" is not created by the Constitution but "[r]ather [by] independent sources, including state law, contracts, or other 'mutually explicit understandings.'" *Coleman*, 673 Fed. Appx. at 827–28.

Rhoades cannot allege a property interest in his former job as Commissioner. Rhoades does not allege he was a "permanent classified employee" eligible for protections under the Oklahoma Personnel Act, nor any other facts supporting a property interest in his job as Commissioner. Thus, as a matter of law, Rhoades must be regarded as an at-will employee. *Bunger v. Univ. of Oklahoma Bd. of Regents*, 95 F.3d 987, 990 (10th Cir. 1996) (Under Oklahoma law, "public employees are employed at will unless they have specific contractual arrangements entitling them to continued employment"). As an at-will employee, Rhoades' employment "[could] be terminated with or without cause, at any time, at the option of the employer or the employee." *Lane v. Town of Dover*, Okl., 761 F.Supp. 768, 771 (W.D. Okla. 1991) (granting summary judgment and dismissing former police chief's due process claim because he was an at-will employee with no property interest in his former job). Because "[a]t-will employees lack a property interest in continued employment," Rhoades cannot allege a property interest in his

9

former job as Commissioner and cannot state a due process claim under Section 1983 based on his termination from that position.  *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1252 (10th Cir. 2007).[5]

Likewise, Rhoades cannot allege a property interest in his prior position at DPS by virtue of 47 Okla. Stat. § 2-102(D).  Assuming *arguendo* that § 2-102(D) creates a "legitimate expectation in continued employment" by allowing outgoing DPS commissioners to return to their prior positions at DPS, the statute specifically excludes those who are "disqualified due to disciplinary reasons, *termination of employment* or inability to effectively lead the agency." 47 Okla. Stat. § 2-102(D) (emphasis added). According to this clear and unambiguous statutory language, a DPS employee who is appointed to the position of Commissioner and then terminated has no legitimate expectation of returning to his or her prior position within the Department.

The Amended Complaint (which is accepted as true for purposes of this Motion) alleges that all Plaintiffs, including Rhoades, were *terminated* from their positions at DPS. *See* Am. Compl. at ¶¶ 173-77 ("Fifth Cause of Action . . . (Wrongful

---

[5] Though Plaintiffs do not plead it, Defendants anticipate that Rhoades will contend that Oklahoma's general removal statute, 74 Okla. Stat. § 2, gives him a property interest in his position as Commissioner because it purportedly limits the Governor's power to remove officers "for cause."  But Oklahoma courts have made clear since before statehood that 74 Okla. Stat. § 2 and similarly worded provisions grant the Governor exclusive authority to terminate subordinates in the executive branch without notice or hearing. *See, e.g.*, *Cameron v. Parker*, 38 P. 14, 17 (Okla.Terr. 1894); *Bynum v. Strain*, 218 P. 883 (Okla. 1923) (noting such executive decisions are beyond judicial review). Because Rhoades alleges he was an executive branch official subordinate to the Governor, he cannot allege a property interest in continued employment based on the removal statute.

Termination)"). Indeed, the Amended Complaint alleges no less than 20 times that Plaintiffs were "terminated." *See id*. at ¶105; *Id.* at p. *19 (sub-heading: "**F. TERMINATION OF PLAINTIFFS**").  Based on Plaintiffs' own allegations, Rhoades was therefore "disqualified" from returning to his prior position at DPS. 47 Okla. Stat. § 2-102(D).  Because of his disqualification, he had no legitimate expectation of continued employment and no protected property interest in returning to his prior position within DPS.

Because Rhoades has failed to plausibly allege he had a property interest in continued employment at DPS, he cannot state a due process claim under §1983 and the First Cause of Action should be dismissed with prejudice.

### B.  Rhoades' Due Process Claim Based on 47 Okla. Stat. § 2-102(D) Fails Because the Individual Defendants Have Qualified Immunity.

Rhoades' due process claim also fails because he does not plausibly allege a violation of a constitutional right that was "clearly established" at the time of the alleged violation; and therefore, the individual Defendants are entitled to qualified immunity.

"To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were *clearly established* at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (emphasis added). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).  "[T]his does not require a case directly on point, but existing precedent must

have placed the statutory or constitutional question regarding the illegality of the [Defendants'] conduct *beyond debate*." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (emphasis added). In analyzing whether a constitutional right was "clearly established," the Supreme Court has cautioned courts not to approach the question "at a high level of generality" but to assess "whether the official acted reasonably in the particular circumstances that he or she faced" in light of the legal rules in existence at the time. *Id*. at 1239-40 (quoting *Plumhoff v. Richard*, 572 U.S. 765, 779 (2014)).

Applying these principles here, Rhoades must plausibly allege that (a) he had a constitutional right to due process before he was terminated from DPS and not given the option of returning to his prior position and (b) that this right was clearly established or "beyond debate" at the time, based on existing precedent.

Even if the Court were to find that Rhoades plausibly alleged he was entitled to due process based on 47 Okla. Stat. § 2-102(D), Rhoades has failed to allege that right was "clearly established" or "beyond debate" at the time of his termination. The statute on which Rhoades relies was enacted in November 2018. Plaintiffs point to no case, state or federal (and Defendants are aware of none) that interprets the relevant sub-section of the statute—much less that says 47 Okla. Stat. § 2-102(D) confers a property interest, let alone a property interest on DPS commissioners who are *terminated*. So, the only authority that the individual Defendants could have relied on when they allegedly terminated Rhoades was the text of the statute itself. As explained *supra*, one could reasonably interpret § 2-102(D) to specifically disqualify terminated employees, like Rhoades, from returning to their previous positions within the Department. Under this

reasonable interpretation, Rhoades would not have a property interest in continued employment at DPS, he would not be entitled to due process, and any failure to afford him the same would not violate the Constitution.[6]

It is well-established that, in the absence of decisional law, a government official has qualified immunity if he acts consistently with a reasonable interpretation of the applicable statute. *See Duncan v. Gunter*, 15 F.3d 989, 992 (10th Cir. 1994) (holding official had qualified immunity because "one may reasonable interpret the statute" to permit the official's actions, and therefore "the law did not clearly prohibit" official's conduct) (affirming dismissal of complaint).

For instance, in *Derda v. City of Brighton, Colo.*, a former city employee sued the city manager in his individual capacity, alleging she was terminated without due process. 53 F.3d 1162, 1166 (10th Cir. 1995). The terminated employee asserted that a Colorado state statute gave her a property interest in continued employment. The city manager moved for summary judgment on qualified immunity grounds, and the district court denied the motion. Reversing, the Tenth Circuit noted that only two courts had opined on the meaning of the statute in question and neither had found it conferred a property right in employment. Based on this fact and the court's own analysis of the statute, the Tenth Circuit held "[i]t is at least unclear whether [the statute] is intended to confer on employees an interest in continued employment." *Id.* Because of this "uncertainty"

---

[6] Likewise, qualified immunity defeats any due process claim by Rhoades premised on 74 Okla. Stat. § 2, given the Oklahoma precedent interpreting that statute and similarly worded provisions to give the Governor unfettered discretion to terminate executive officers like Rhoades (see *supra*).

regarding the proper interpretation of the statute, the court concluded that plaintiff had "at a minimum . . . failed to demonstrate that any right violated was clearly established at the time she was terminated." *Id*.  As a result, the court held the city manager was entitled to qualified immunity. *Id*.

As in *Duncan* and *Derda*, the alleged actions of the individual Defendants were consistent with a reasonable interpretation of the statute. If § 2-102(D) affords a right to due process, the statute is, at a minimum, unclear.  Therefore, the individual Defendants are entitled to qualified immunity and Rhoades' due process claim based on § 2-102(D) should be dismissed. *See Duncan*, 15 F.3d at 992; *Derda*, 53 F.3d at 1166.

## II.    Rhoades and Harrell Fail to State a Due Process Claim Under the Oklahoma Constitution.

Because the Oklahoma Constitution does not create a private right of action independent from the OGTCA, Plaintiffs' Second and Fourth Causes of Action must be dismissed.

Even assuming Rhoades and Harrell plausibly allege a due process violation (which Defendants do not concede), they can point to no authority suggesting that Oklahoma recognizes a private right of action for such a violation.  *See Earles v. Cleveland*, 418 F.Supp.3d 879, 890 (W.D. Okla. 2019) (dismissing terminated employee's due process claim brought under the Oklahoma Constitution because Oklahoma does not recognize such action).

To the extent Rhoades and Harrell rely on the Oklahoma Supreme Court's decision in *Bosh v. Cherokee Cty. Bldg. Auth*., 305 P.3d 994, 1001 (Okla. 2013) and its

14

progeny, their claims are still a non-starter.  In *Bosh*, the Court recognized a prisoner's right to bring a tort claim for excessive force under the Oklahoma Constitution.  The *Bosh* decision created confusion as to what other "constitutional torts" might be recognized by Oklahoma courts. Since *Bosh*, however, the Oklahoma Legislature amended the OGTCA to specify that Oklahoma's immunity from suit extends to torts arising from alleged constitutional violations.  *Barrios v. Haskell County Pub. Facilities Auth.*, 432 P.3d 233, 238 (Okla. 2018)[7]; *see also* 51 Okla. Stat., §§ 152(14), 153(B). The OGTCA amendments make actions premised on a violation of the Oklahoma Constitution subject to the OGTCA and foreclose a separate cause of action under the Oklahoma Constitution. *See id*.

As a result, Rhoades' and Harrell's claims under Art. II, Section VII of the Oklahoma Constitution must be dismissed. *See Earles*, 418 F.Supp.3d at 890; *Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*, CIV-18-707-G, 2019 WL 4752269, at *12 (W.D. Okla. Sept. 30, 2019) (dismissing plaintiff's state-law claims for alleged violation of his due process rights under article 2, section 7 of the Oklahoma Constitution in light of the OGTCA amendments and the *Barrios* decision).

### III.   Plaintiffs Fail to State a Claim for Wrongful Termination Under the Oklahoma Governmental Tort Claims Act.

Because Oklahoma's Whistleblower Act, 74 Okla. Stat. §840-2.5 et. seq.,

---

[7] The *Barrios* court noted that "[e]ven if not barred by sovereign immunity, . . . it is doubtful that such [constitutional] claims would exist in the Oklahoma common law." *Barrios*, 432 P.3d at 239 ("Certainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages."

adequately addresses the public policy concerns alleged by Plaintiffs, their wrongful termination claim under the OGTCA is barred as a matter of law.

In their Fifth Cause of Action, Plaintiffs allege a wrongful termination claim under the OGTCA against the State of Oklahoma *ex rel* the Office of the Governor and Governor Kevin Stitt in his official capacity. Am. Compl. ¶173-77.  Under Oklahoma law, an at-will employee generally cannot bring a claim for wrongful termination action because the employer can terminate the employee "for any reason or no reason without incurring liability to the employee." *McCrady v. Oklahoma Dep't. of Pub. Safet*y,  2005 OK 67, ¶6, 122 P.3d 473, 474-75.  Under this general rule, the wrongful termination claim brought by Plaintiffs (all former at-will employees) would be barred as a matter of law.

However, in *Burk v. K–Mart Corp*., the Oklahoma Supreme Court recognized a limited exception to this rule, allowing an at-will employee to bring a wrongful termination suit if he or she was terminated in violation of "'a clear mandate of public policy', as articulated by constitutional, statutory or decisional law." *McCrady*, 2005 OK 67, ¶7, 122 P.3d at 475 (citing *Burk*, 1989 OK 22, 770 P.2d 24).  Claims brought by at-will employees under this public policy exception are known as *Burk* claims.  Although Plaintiffs do not reference *Burk* directly, they repeatedly allege their terminations were in violation of "public policy." Accordingly, Defendants assume Plaintiffs are attempting to invoke the *Burk* public policy exception.

A viable *Burk* claim must allege, among other things, that no statutory remedy exists that is adequate to protect the Oklahoma policy goal at issue.  *See Shephard v.*

16

*Compsource Oklahoma*, 2009 OK 25, ¶ 4, 209 P.3d 288, 290–91 ("Where a statutory remedy exists that is sufficient to protect the Oklahoma public policy goal, an employee has an adequate remedy that precludes resort to a tort cause of action to redress a termination in violation of the public policy.").  Put simply, if an adequate statutory remedy exists, a *Burk* claim does not lie.

For purposes of the *Burk* analysis, the Whistleblower Act provides an adequate remedy for at-will public employees allegedly terminated for reporting government misconduct.  "The purpose of the Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities." 74 Okla. Stat. § 840–2.5(A). The Act defines the "wrongful governmental activities" that state employees are protected in reporting to include "a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety." *Id.* at § 840–2.5(B).

The Whistleblower Act not only prohibits officers and employees of the state from taking disciplinary action, including termination, against whistleblowers, it provides specific remedies to ensure the purposes of the Act are carried out. These include an appeals process for the whistleblower that can result in reinstatement, back pay, other employment benefits, and attorney's fees. Okla. Admin. Code 455:10–9–2(f)(1)(B); Okla. Admin. Code 455:10–15–1.  The Whistleblower Act also prescribes corrective action against state employees who are found to have violated the Act. 74 Okla. Stat. § 840–2.5(H).

17

In light of the above, courts have routinely dismissed *Burk* claims where the plaintiff's allegations fell within the purpose and scope of the Whistleblower Act. For example, in *Shephard*, a former state employee brought a wrongful termination claim alleging she was fired in retaliation for reporting illegal travel claims. *Shephard*, 2009 OK 25, ¶2, 209 P.3d at 290.  Affirming the judgment of the lower courts, the Oklahoma Supreme Court held that the former employee's *Burk* claim was barred because the Whistleblower Act provided an adequate remedy to protect the public policy goals at issue. *Id*. at ¶12, 293.

Similarly, in *Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health and Substance Abuse Serv*s., plaintiffs brought a *Burk* claim alleging they had been terminated by the Oklahoma Department of Mental Health and Substance Abuse Services for internally reporting that the Department "was not enforcing the public policy of providing adequate treatment for drug and alcohol addiction, and that this endangered public safety." 683 Fed.Appx. 691, 695 (10th Cir. 2017) (unpublished).  Holding that plaintiffs' allegations "fall squarely within the Whistleblower Act [and] [n]o *Burk* claim is cognizable for these allegations," the Tenth Circuit affirmed the dismissal of plaintiffs' wrongful termination claims.  *Id*.; s*ee also Khave v. Norman, OK (State) VA Center*, CIV-13-985-M, 2014 WL 2136027, at *5 (W.D. Okla. May 22, 2014) (dismissing plaintiff's claim that she was terminated because Whistleblower Act provided adequate remedy); *Dixon v. Oklahoma Bd. of Veterinary Med. Examiners*, CIV-06-1003-M, 2009 WL 1473973, at *3 (W.D. Okla. May 26,  2009) (same).

Here, Plaintiffs allege they were terminated in "retaliation" for "their efforts to

*expose* corruption by people associated within the OHP and/or DPS." Am. Compl. ¶¶ 174, 122 (emphasis added). This alleged "corruption" included ethical and legal violations involving DPS' civil asset forfeiture program and corruption within the OHP. As in *Poff*, Plaintiffs' allegations fall squarely within the Whistleblower Act.  The efforts for which Plaintiffs' claim they were terminated include "reporting . . . violation[s] of . . . state or federal law" and "discussing" purported government misconduct within DPS with "persons in a position to investigate or initiate corrective action." 74 Okla. Stat. § 840-2.5(B)(3) and (B)(4).  Under the Whistleblower Act, Plaintiffs had a right to seek redress through the process prescribed in the Whistleblower Act. 74 Okla. Stat. §§ 840–2.5(G) and (H). They chose not to.  As a result, their wrongful termination claim must be dismissed. *See Shephard*, 2009 OK 25, ¶4, 209 P.3d at 291; *Poff*, 683 Fed. Appx. at 695.

In addition, the OGTCA provides that "[t]he state or a political subdivision shall not be liable if a loss or claim results from . . . [p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." OKLA. STAT. TIT. 51, § 155(5).  Pursuant to this discretionary function exemption, "initial policy level or planning decisions are considered discretionary and hence immune. . . ."  *Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cty.*, 949 F.Supp.2d 1104, 1109 (W.D. Okla. 203).  This Court has held that a state's personnel decisions (e.g., hiring, supervision, retention) of managerial employees fall within the protection of this exemption and should be protected from court scrutiny. *Id.*; *Benedix v. Indep. Sch. Dist. No. I-007 of Oklahoma Cty., Okla.*, No. CIV-08-1060-D, 2009 WL 975145, at *3 (W.D. Okla. Apr. 9, 2009)

While the above cases address claims that the government negligently hired, supervised, or retained an employee, the principle that personnel decisions are discretionary is applicable to the present case. *See Sydnes v. U.S.*, 523 F.3d 1179, 1186-87 (10th Cir. 2008) (applying the same discretionary exemption in FTCA to the government's decision to terminate two employees). Plaintiffs' OGTCA claim challenges the State of Oklahoma's decision to not retain Plaintiffs as managerial employees at DPS. This claim falls squarely within the discretionary function exemption. Accordingly, Plaintiffs' wrongful termination claim must be dismissed as a matter of law.

## IV. Plaintiffs Fail to State a Claim of Tortious Interference.

Plaintiffs allege Keating, Nelson, and Claro interfered with their employment relationships resulting in the termination of Plaintiffs' employment. *See* Am. Compl. at ¶¶178-84. In order to state a plausible interference claim, Plaintiffs must plead facts demonstrating: (1) Defendants interfered with Plaintiffs' contractual/employment rights, (2) the interference was malicious, wrongful, and without justification, privilege, or excuse, and (3) the interference proximately caused Plaintiffs harm. *See Angove v. Williams-Sonoma, Inc.*, 70 Fed.Appx. 500, 509 (10th Cir. 2003). Plaintiffs have not adequately pleaded such factual allegations.

### A. Plaintiffs Have Not Sufficiently Pleaded Keating, Nelson, or Claro Interfered with Plaintiffs' Employment.

In order to state an interference claim, a plaintiff must plead the defendant took some action to interfere with another's employment. *See Davidson v. Conine*, No. CIV-18-836-SLP, 2019 WL 2524839, at *4 (W.D. Okla. June 18, 2019) (dismissing plaintiffs'

claim as "wholly conclusory" because plaintiffs failed to plead "specific conduct is identified by any particular Defendant."); *Goff v. Hukill*, No. 08-CV-71-TCK-FHM, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010).

In conclusory fashion, Plaintiffs allege "Defendants each were involved in the decision to terminate Plaintiffs." Am. Compl., ¶ 114. But, they do not allege *how* they were involved. Plaintiffs do allege Defendants engaged in conduct of which Plaintiffs disapprove, but they do not adequately tie such alleged conduct to their terminations. Plaintiffs' failure to plead the first element of an interference claim means they have also failed to sufficiently plead the third element (causation). Accordingly, the Court should dismiss Plaintiffs' interference claims.

### B. Plaintiffs Have Not Adequately Pleaded Keating and Nelson Acted Maliciously and Wrongfully—i.e., to Advance Their Own Personal Interests.

The second element of an interference claim is Defendants acted maliciously and wrongfully when they interfered with Plaintiffs' employment. *Angove*, 70 Fed.Appx. at 509. Even assuming Plaintiffs have pleaded specific interference actions, their claims still fail as they have not adequately pleaded that Keating and Nelson acted maliciously or wrongfully.

Malice requires a showing that Defendants acted unreasonably and with gross recklessness. *See Tuffy's*, 2009 OK 4, at ¶¶ 14-15; 212 P.3d at 1165; *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 18; 91 P.3d 673. Defendants also must have acted outside the scope of their employment in allegedly interfering with Plaintiffs' employment. *See Shephard*, 2009 OK 25, ¶ 16, 209 P.3d at 293-94 (a government

employee acting within the scope of his employment cannot be liable for interfering with another's employment). As this Court has explained,

> [u]nder Oklahoma law, it is not enough for a plaintiff to prove that a supervisor acted on behalf of the employer (i.e., within the scope of the supervisor's employment), but exercised his/her authority inappropriately due to personal bias or bad faith. **Ultimately, the facts must show the supervisor was acting to pursue or advance his or her own interests**.

*See Kinsey v. Cable Meat Center, Inc.*, CIV-07-0704-HE, 2007 WL 9711147, at *2 (W.D. Okla. Oct. 10, 2007) (emphasis added); *see also Tuffy's,* 2009 OK 4, at ¶ 15, 212 P.3d at 1165 (an act is in the scope of one's employment "if it is done, however ill-advisedly, with a view to further the employer's interest or arises out of an emotional response to actions being taken for the employer").

Here, Plaintiffs' Amended Complaint does not include well-pleaded, non-conclusory allegations that Keating or Nelson acted in bad faith, gross recklessness, or outside the scope of their employment. First, Plaintiffs do not allege facts showing the motive of Keating and Nelson's alleged conduct was to further their own, personal interests. At most, they allege Keating and Nelson took actions to protect the image of their superiors and/or governmental departments and agencies. Plaintiffs might allege Defendants pursued these ends through ill-advised means (which Defendants deny), but such allegations are insufficient to state a plausible claim for interference.

Plaintiffs allege Keating and Nelson acted to facilitate the removal of Plaintiffs so they could direct DPS, but they do not allege they did this for personal gain. To the contrary, Plaintiffs admit Keating was appointed as a cabinet secretary, and Nelson his

deputy, to preside over all public safety issues in Oklahoma. *See* Am. Compl., ¶ 30, 32. At most, Plaintiffs allege Keating and Nelson attempted to perform their assigned duties as cabinet secretaries in a manner disagreeable to Plaintiffs. Such allegations are insufficient to establish malice.

Second, Plaintiffs allege Keating and Nelson acted outside the scope of their employment because their cabinet positions are not referenced in any statute. This allegation is misguided. Title 47, Oklahoma Statutes, Section 2-101(b) states "[t]he Governor shall be the chief officer of the Department of Public Safety." Governor Stitt, as chief officer, has the authority to assign government personnel to perform tasks related to, and interact with, DPS. Plaintiffs admit Keating and Nelson were appointed by Governor Stitt as Secretary of Public Safety and Assistant Secretary of Public Safety, respectively. *See* Am. Compl. ¶¶ 30, 32. These positions necessarily require performing tasks related to, and interacting with, DPS. A government employee acts within the scope of his employment when he performs "tasks lawfully assigned by a competent authority." *See* 51 Okla. Stat. § 152(12). Thus, actions related to DPS matters, including investigations, were within the scope of Keating and Nelson's employment. Plaintiffs have not adequately pleaded otherwise.[8]

---

[8] Plaintiffs' failure to adequately plead Keating and Nelson acted outside the scope of their employment is fatal to their interference claims because actions taken by an employee within the scope of his employment are attributable to his employer. *See Batton v. Mashburn*, 107 F.Supp.3d 1191, 1198 (W.D. Okla. 2015). A party to an at-will employment contract cannot be liable for interfering with the contract. *See id*. As a result, Keating's and Nelson's alleged actions are not actionable. *See id*.

Moreover, the OGTCA states "[i]n no instance in any [action based on state law] shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as a defendant. . . ." OKLA. STAT. tit. 51, § 153(C). Because Plaintiffs have not sufficiently pleaded Keating or Nelson acted outside the scope of their employment, they are immune from personal liability for any allegation of tortious interference with Plaintiffs' employment relationships. Accordingly, the Court should dismiss Plaintiffs' tortious interference claims as to Keating and Nelson.

**V.  Plaintiffs Fail to State a Due Process Claim Against Stitt Based on His Alleged Statements to the Press Regarding Plaintiffs' Terminations.**

Plaintiffs allege that after their terminations, Governor Stitt made false statements to *The Oklahoman* regarding the circumstances surrounding their terminations, violating their liberty interests in future employment without affording due process of law.

To assert a cognizable liberty deprivation claim, Plaintiffs must sufficiently plead, among other things, that the alleged false statements by Stitt "impugn[ed] the[ir] good name, reputation, honor, or integrity." *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). To meet this standard, Plaintiffs must allege statements that are sufficiently "stigmatizing" that they impugn their "honesty or immorality." *See Fox-Rivera v. Colorado Dept. of Public Health & Env.*, 610 Fed.Appx. 745, 748 (10th Cir. 2015).

But as the Tenth Circuit has held "repeatedly," "statements involving unsatisfactory performance are not sufficiently stigmatizing for a protected liberty interest." *Id.*; *see also Southeast Kansas Community Action Program Inc. v. Secretary of Agriculture of U.S.*, 967 F.2d 1452, 1458–59 (10th Cir. 1992) (holding "charges

24

involving negligence and neglect of duties" insufficient); *Earles v. Cleveland*, 418 F.Supp.3d 879, 896–97 (W.D.Okla., 2019) (holding alleged statement that plaintiff "'was incompetent and worthless' and that she did not have a good work ethic" insufficient) (dismissing due process claim and citing cases).

None of the statements attributed to Stitt in the Amended Complaint (and the news articles in Ex. 2 to the Duncan Declaration) are actionable under the legal standard set forth above. Most of Stitt's alleged remarks fall squarely into the category of statements involving unsatisfactory job performance—specifically, Plaintiffs' failure to implement the requirements of the REAL ID Act, including a lack of "leadership" at DPS. These statements are not actionable. *See id*. As for the allegation that Stitt falsely characterized Plaintiffs' terminations as "retirements," this statement does not impugn Plaintiffs' honesty or immorality and is not actionable. The Amended Complaint also alleges Stitt made "false assertions about Plaintiff Rhoades' role in the investigation" of Troy German, but does not state what those assertions were. The September 3, 2019 news article reported that one of Stitt's considerations in terminating Rhoades was the fact that DPS was "embroiled in controversy stemming from back-and-forth allegations of wrongdoing between [Rhoades] and [German]." But Stitt did not endorse German's allegations of wrongdoing against Rhoades and he did not impugn Rhoades' honesty or immorality in either article. As such, Plaintiffs have failed to allege a protected liberty interest, and Plaintiffs' Seventh Cause of Action should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the challenged causes of action should be dismissed.

Respectfully submitted,

*/s/ Michael A. Duncan*
W. Kirk Turner, OBA No. 13791
Jacob S. Crawford, OBA # 31031
MCAFEE & TAFT, A PROFESSIONAL CORPORATION
Two West Second Street, Suite 1100
Tulsa, Oklahoma  74103
Telephone (918) 587-0000
Facsimile (918) 599-9317
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com

Ronald T. Shinn, Jr., OBA # 19569
Michael A. Duncan, OBA # 32382
MCAFEE & TAFT, A PROFESSIONAL CORPORATION
211 North Robinson, 10th Floor
Oklahoma City, Oklahoma  73102
Telephone:  (405) 235-9621
Facsimile:  (405) 235-0439
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**

26

## CERTIFICATE OF SERVICE

   I hereby certify that on December 7, 2020, I transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

   Dustin J. Hopson, Esq.
   Hopson Legal, LLC
   512 NW 12th Street
   Oklahoma City, OK  73103
   dustin@hopsonlawfirm.com

   **Attorney for Plaintiffs**

          */s/ Michael A. Duncan*

27