**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) BILLY D. "RUSTY" THOADES III, an individual; | ) | |
| (2) MEGAN L. SIMPSON, and individual; And | ) ) ) | |
| (3) MICHAEL S. HARRELL, an individual | ) ) | |
| Plaintiffs, | ) | Case No. CIV-20-761-R |
| v. | ) ) | |
| (1) THE STATE OF OKLAHOMA, ex rel. GOVERNOR KEVIN STITT; | ) ) | |
| (2) THE SATE OF OKLAHOMA, ex rel. THE DEPARTMENT OF PUBLIC SAFETY; | ) ) ) | |
| (3) KEVIN STITT, an individual; | ) | |
| (4) CHIP KEATING, an individual; | ) | |
| (5) JASON NELSON, and individual; and | ) | |
| (6) JOE CLARO, an individual, | ) | |
| Defendants. | | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND PARTIAL MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6)

Dustin Hopson, OBA #19485
Hopson Legal, LLC
119 N. Robinson Ave., Ste. 650
Oklahoma City, OK 73102
Telephone: (405) 673-7560
dustin@hopsonlawfirm.com

ATTORNEY FOR PLAINTIFFS

December 28, 2020

## TABLE OF CONTENTS

STATEMENT OF THE CASE.................................................................................1

RESPONSE TO DEFENDANT'S STATEMENT OF FACTS ................................3

STANDARD OF REVIEW .................................................................................4

ARGUMENT AND AUTHORITIES ....................................................................5

    I.  Plaintiff Rhodes has stated a plausible claim for violation of due

        process under 42 U.S.C. § 1983 and the Fourteenth Amendment.............5

        a.  Oklahoma law establishes a property interest in continued

           employment for agency heads appointed by the Governor..............5

        b.  Defendants do not enjoy qualified immunity against Plaintiffs'

           claims.............................................................................................7

   II.  Plaintiffs have asserted viable due process claims under Article II,

      Section 7 of the Oklahoma Constitution ....................................................10

  III.  Plaintiffs' wrongful termination claims are not foreclosed by the

      Whistleblower Act ....................................................................................13

  IV.  Plaintiffs' have sufficiently stated a claim for tortious interference

      against Defendants' Keating, Nelson, and Claro ......................................19

   V.  Plaintiffs have sufficiently plead a due process claims due to

      Publication of false statements to the media and others  .........................24

  VI.  Conclusion..............................................................................................25

 VII.  Certificate of Service  .............................................................................26

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*A.M. v. Holmes*
830 F.ed 1123, 1134-35 (10th Cir. 2016), cert. denied,
---- U.S. ----, 137 S.Ct. 2151, 198 L.Ed.2d 221 (2017)..............................8

*Anderson v. Creighton*
483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ......................9

*Ashcroft v. Iqbal*
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868(2009) .....................4

*Barrios v. Haskell County Pub. Facilities Auth.*
432 P.3d 233, 238 (Okla. 2018)................................................................12

*Berube v. Fashion Centre, Ltd.,*
771 P.2d 1033, 1044 (Utah 1989) .............................................................7

*Bosh v. Cherokee County Bldg. Auth.*
305 P.3d 994, 1001 (Okla. 2013)......................................................11, 13

*Brousseau v. Haugen*
543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ......................9

*Burk v. K-Mart Corp.*
1989 OK 22, 770 P.2d 24).............................................................14, 19

*Carter v. Spirit Aerosystems*, No.19-3228 .............................................4
(10th Cir. 2020)

*Cillo v. City of Greenwood Village*
739 F.3d 451, 460 (10th Cir. 2013)............................................................9

*Coleman v. Utah State Charter Sch. Bd.*
673 Fed.Appx. 822, 827-28 (10th Cir. 2016) ..............................................6

*Conaway v. Smith*
853 F.2d 789, 793 (10th Cir. 1988)..........................................................10

*Cummings v. Dean*
913 D.3d 1227, 1239 (10th Cir. 2019) ........................................................8

Dawson v. Bd. Of Cty. Commr's of Jefferson Cty.
    732 F.App'x 624, 634 (10th Cir. 2018)......................................................10

E. Okla. Bld. & Constr. Trades Council v. Pitts
    P.3d 1008, 1012 (Okla. 2003)..................................................................11

Earles v. Cleveland
    418 F.Supp.3d 879, 891 (W.D. Okla. 2019) .......................................11, 12

Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.,
    889 F.3d 1153, 1161 (10th Cir. 2018)........................................................4

Free Speech v. Fed. Election Comm'n
    720 F.3d 788, 792 (10th Cir. 2013)............................................................4

Hope v. Pelzer
    536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ...................9

Kerber v. Qwest Grp. Life Ins. Plan
    647 F.3d 950, 959 (10th Cir. 2011)............................................................4

Kisela v. Hughes, 138 S.Ct.
    1148, 1157, 200 L.Ed.2d 449 (2018) .........................................................9

Koch v. City of Del City
    CIV-07-371-D, 2010 WL 1329819 at *11
    (W.D. Okla. March 29, 2010)...................................................................12

McCormick v. Halliburton, Co.
    895 F.Supp.2d 1152, 1157 (W.D. Okla. 2012) .........................................11

McCrady v. Oklahoma Dep't of Pub. Safety
    2005 OK 67, 122 P.3d 473, 475 ...............................................................14

Minter v. Prime Equip. Co.
    451 F.3d 1196, 1204 (10th Cir. 2006)......................................................22

Mullenix v. Luna, ---- U.S. ----
    136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ........................................8, 9

Pellegrino v. State ex rel. Cameron Univ.
    63 P.3d 535, 537 (Okla. 2003).................................................................12

Perry v. City of Norman
    341 P.3d 689, 692-693 (Okla. 2014) ........................................................11

*Plumhoff v. Rickard*
    572 U.S. 765, 779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ..................9

*Quinn v. Young*
    780 F.3d 998, 1004 (10th Cir. 2015)...........................................................8

*Reichle v. Howards*
    566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ...................8

*Robbins v. U.S. Bureau of Land Management.*
    438 F.3d 1074, 1085 (10th Cir. 2006).........................................................6

*Schrock v. Wyeth, Inc.*
    727 F.3d 1273, 1280 (10th Cir. 2013).........................................................4

*Stanley v. Orman*
    461 F.3d 1218, 1221 (10th Cir. 2006).........................................................5

*Teigen v. Renfrow*
    511 F.3d 1072 (10th Cir. 2007)............................................................6, 10

*T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cty.*
    546 F.3d 1299, 1306 (10th Cir. 2008)...............................................4, 20, 21

*Watson v. University of Utah Medical Center*
    75 F.3d 569 (10th Cir. 1996) .................................................................5, 7

## **STATUTES**

43 O.S. § 2-117 ...................................................................1, 2, 16, 17

74 O.S. § 2 ...............................................................................7, 10

47 O.S. § 2-102(A) ...........................................................................7

47 O.S. §2-102(D) ........................................................................9, 10

47 O.S. §2-117 .....................................................................14, 16, 18

51 O.S. §152(12)...................................................................12, 19, 24

740 O.S. § 840 ............................................................................13

74 O.S. § 840-2.5(B) ...................................................................15, 18

47 O.S. § 2-105 ..................................................................................24

47 O.S. § 2-102(A) ...............................................................................7

47 O.S. § 2-102(A)(1) ..........................................................................20

## **OTHER AUTHORITITES**

Okla. Const. Fourteenth Amendment .......................................5, 10, 11

Okla. Const. art. II § 7 ........................................................................11

Okla. Const. art. II § 30 ......................................................................11

Okla. Const. art. II § 1983 ...............................................................5, 11

Oklahoma Whistleblower Act ..........................13, 14, 15, 16, 17, 18, 19

FED. R. CIV. P. 15(a).....................................................................20, 21

FED. R. CIV. P. 12(b)(6) .............................................1, 3, 4, 7, 23

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND PARTIAL MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6)

COME NOW, the Plaintiffs, by and through their attorney of record, Dustin J. Hopson, and in support of their Response to Defendants' Second[1] Partial Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(6) offer the following:

## STATEMENT OF THE CASE

Plaintiffs served as the leadership of the Oklahoma Department of Public Safety ("DPS") and the Oklahoma Highway Patrol ("OHP") prior to September 2, 2019. In their respective positions, Plaintiffs had a duty and obligation under 43 O.S. §2-117 to ensure the rights of Oklahomans were not violated by DPS and OHP employees, and to investigate, discipline, and submit for prosecution employees of the agency that engaged in illegal activity. In each of their positions with DPS and OHP, Plaintiffs diligently did the duties of their job consistent with this established public policy of the state of Oklahoma, as established by the statute.

In 2019, a Trooper of the Oklahoma Highway Patrol, Troy German, was prosecuted for blackmail of DPS Commissioner and Plaintiff, Rusty Rhoades. Despite Plaintiffs' desire to continue the prosecution of Trooper German, charges were dismissed under unusual circumstances and falsely attributed to the desire of Plaintiffs, as leadership of DPS, to have charges dismissed. Following dismissal

---

[1] Defendants' Second Partial Motion to Dismiss is a near word-for-word reiteration of their First Motion to Dismiss. As such, Plaintiffs adopt and incorporate their Response to Defendants' First Motion to Dismiss as if fully set forth herein.

of charges against Trooper German, Plaintiffs continued to perform the statutorily required duties of their job, which required continued investigation and oversight of DPS and the OHP under 43 O.S. §2-117.

Plaintiffs assert that Defendants sought to interfere with and end investigation and oversight consistent with, and required by, the law of Oklahoma and therefore Oklahoma public policy. Defendants acted to interfere with the legally required activities of the Plaintiffs by terminating them for pretextual reasons. As part of Plaintiffs' actions to facilitate and administratively support the elimination of rights violations by DPS as an agency, Plaintiff Simpson notified Defendant Claro of his termination, in part due to his involvement to cover up such rights violations by the DPS civil asset forfeiture program. Correction of this unconstitutional program in turn threatened the improper receipt and use of money in violation of the constitution by the State of Oklahoma.

In an effort to retaliate against Plaintiffs and to return to his position as a bureaucrat with DPS, Defendant Claro knowingly advanced false reports to Defendants Keating, Nelson, and Stitt. Defendants at all times knew that DPS had met all benchmarks of the REAL ID program as required to bring state driver's licenses in compliance with federal law. Despite this knowledge, and motivated by the desire to interfere with and end investigations and discipline within the OHP and DPS, Defendants relied upon Claro's false reports, and recklessly, knowingly, and in bad faith, falsely accused Plaintiffs of failing to meet such benchmarks, using such false allegations as the reason for Plaintiffs' termination. Such actions

violate Plaintiffs' federal rights and the law of the State of Oklahoma, and claims for these violations are presented in this action.

## **RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

Plaintiffs have asserted the facts underlying their cause of action in the Amended Complaint, and therefore adopt and incorporate them herein as if fully set forth. However, it is significant to note that Defendants continue to misstate much of the Plaintiffs' factual allegations, as they did in their First Motion to Dismiss, to their convenient benefit, and also repeatedly make efforts in their "Statement of Facts" to distinguish, parse, misstate, or declare self-serving inferences of their own from the Plaintiffs' assertions, rather than accept them as true for purposes of FED. R. CIV. P. 12(b)(6). To the extent Defendants have done so, Defendants' Statement of Facts is wholly irrelevant. The Court's only consideration in determination of a Motion to Dismiss must be the assertions the Plaintiffs, and not the Defendants, make in the Amended Complaint. See Standard of Review, below. Moreover, as the Court must review a Motion to Dismiss and ascertain the sufficiency of the pleadings, consideration of the attached evidentiary exhibits by the Defendants, such as what they identify as "The Duncan Declaration" and a partial rendering of material available in support of Plaintiff's claims, is inappropriate and demonstrates further, why such matter should not be dismissed at this time.

## STANDARD OF REVIEW

Defendants present their Second Partial Motion to Dismiss Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure. Under Rule 12(B)(6), the court must "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013)(quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959(10th Cir. 2011)). In examining a Motion to Dismiss, the court must view the record and *all reasonable inferences that might be drawn from it* in the light most favorable to the non-moving party, in this case, the Plaintiffs. *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1306 (10th Cir. 2008)(emphasis added); see also *Carter v. Spirit Aerosystems*, No.19-3228 (10th Cir. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868(2009)). Plaintiffs' claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013)(quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The

Plaintiffs have sufficiently plead their causes of action, and using the standard set forth, Defendants' Second Partial Motion to Dismiss should be denied.

## ARGUMENT AND AUTHORITIES

I.    **Plaintiff Rhodes has stated a plausible claim for violation of due process under 42 U.S.C. §1983 and the Fourteenth Amendment**

    A.    **Oklahoma law establishes a property interest in continued employment for agency heads appointed by the Governor.**

Plaintiff Rhoades has plead claims for procedural and substantive due process pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment due process clause[2]. Defendant argues that Plaintiff Rhoades cannot allege a property interest in continued employment at DPS, relying near exclusively on the assertion that Plaintiff Rhoades was an "at-will" employee. This argument ignores Tenth Circuit precedent as well as express language of the legislature in statutes of the State of Oklahoma, as well as the Plaintiffs' Amended Complaint on its face.

Defendants assert Plaintiff Rhoades did not have a protected property interest in continued employment as Commissioner of the Department of Public Safety. Whether a Plaintiff had a protected property interest is determined by state law. *Watson v. University of Utah Medical Center*, 75 F.3d 569 (10th Cir. 1996). A Plaintiff can maintain a due process claim under the Fourteenth Amendment where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *Stanley v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). The

---

[2] Defendants argue they are unclear which type of due process claim Plaintiff has presented. Plaintiffs state that both are sufficiently plead in their Amended Complaint.

Plaintiff must demonstrate an entitlement to a substantive right or benefit supported by "rules or mutually explicit understandings…that he may invoke at a hearing." *Robbins v. U.S. Bureau of Land Management.*, 438 F.3d 1074, 1085 (10th Cir. 2006)(quotation omitted). The Tenth Circuit Court of Appeals has long recognized that where state laws establish such rules that limit the state's discretion to terminate a Plaintiff's employment, such rules give rise to a protected property interest. See *Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007). Defendants concede in their Second Motion to Dismiss that a legitimate expectation in continued employment may be created by independent sources including state law. See Second Motion to Dismiss, pg 8, citing *Coleman v. Utah State Charter Sch. Bd.*, 673 Fed.Appx. 822, 827-28 (10th Cir. 2016).

In this instance, the "rules and understandings" for employment of the DPS Commissioner cannot be more explicit than those required by the legislature, for all citizens of the state, including the Governor, to rely upon. Under Oklahoma Law, the Governor of the state does not have authority to remove any officer appointed by him for any reason, or at-will, but rather he only has power to remove officers he appointed, such as Plaintiff, "in case of incompetency, neglect of duty, or malfeasance in office." See 74 O.S. §2. This is an express limitation on his discretion to terminate appointed officers, such as Plaintiff, and is a requirement that such officers be terminated for cause. The Defendants choose to ignore this statute, and they then ask this Court to read at-will employment into this Oklahoma law for the convenience of obtaining dismissal of Plaintiff Rhoades's claims.

Defendants effectively ask this Court to ignore the express law of the State of Oklahoma.

Plaintiffs allege, and Defendants cannot refute, that Plaintiff Rhoades was appointed to the position of Commissioner of the Oklahoma Department of Public Safety by the Governor, Defendant Stitt. Such position is appointed not by the Governor alone, but with express requirement of advice and consent of the Senate. See 47 O.S. §2-102(A). Plaintiff could not be removed by the Governor except upon reasons, or cause, set forth in 74 O.S. §2[3]. See *Watson*, 75 F.3d at 578(an employee may rebut the presumption of at-will employment by showing that the parties expressly or impliedly intended or agreed to terminate the relationship for cause)(citing *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)). Given the longstanding commitment of the Tenth Circuit and Supreme Court to recognizing due process claims where such limitations on at-will employment exist, Defendants' Second Motion to Dismiss should therefore be denied.

## B.    Defendants Do Not Enjoy Qualified Immunity Against Plaintiffs' Claims

Defendants next urge this court to dismiss Plaintiff Rhoades's claims on the basis of qualified immunity. However, qualified immunity does not apply in this action. For reasons set forth herein, and because qualified immunity should not apply, Defendants' Second Motion should be denied.

---

[3] To the extent Defendants claim that Defendant Stitt's decision to terminate Plaintiff Rhoades was for one of those reasons, such assertion must be supported by evidence and therefore would be subject to inquiry upon discovery and more properly considered upon a Motion for Summary Judgment, and not relevant to any determination of their motion to dismiss upon review of the Pleadings under Rule 12(b)(6).

Under Tenth Circuit precedent, when a defendant raises a qualified immunity defense, the plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Cummings v. Dean*, 913 D.3d 1227, 1239 (10th Cir. 2019)(citing *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)(internal citations omitted)). If the Plaintiff fails to establish either of these, the defendant prevails on the defense. *Id* (citing *A.M. v. Holmes*, 830 F.ed 1123, 1134-35 (10th Cir. 2016), *cert. denied*, ---- U.S. ----, 137 S.Ct. 2151, 198 L.Ed.2d 221 (2017). As noted above and in response to Defendants' proposition I(A), Plaintiff Rhoades has adequately plead a violation of his due process rights, and his property interest claim is supported by state statute. In Defendants' proposition I(B), Defendants only question whether Plaintiffs' rights were "clearly established."

According to the Supreme Court, "a clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ---- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015)(per curiam)(quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)). A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision or alternatively from the clearly established weight of authority from other courts. See *Cummings*, 913 F.3d at 1239 (citing *Quinn*, 780 F.3d at 1005)(internal citations omitted). The crucial question is whether the official acted reasonably in the face of particular circumstances he faced at the time of the Defendant's unlawful

8

conduct. *Id.* (citing *Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) and *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013)). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S.Ct. 308 (quoting *Brousseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

In this action, Defendants essentially assert that because they cannot identify a case that specifically involves the Oklahoma Statute in question, or whether due process was previously denied to a DPS Commissioner, Defendants' actions did not violate a "clearly established" law, and therefore they are entitled to qualified immunity. The Supreme Court has expressly rejected this argument. See *Kisela v. Hughes*, 138 S.Ct. 1148, 1157, 200 L.Ed.2d 449 (2018). In fact, the Supreme Court "has long rejected the notion that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Id* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The "clearly established" inquiry then turns simply upon whether Defendants had "fair notice" that they acted unconstitutionally. *Id*.

As noted above, it has long been established that where there is an express limitation upon Defendant's ability to terminate an employee amounting to the ability to terminate only for cause, as stated in both 74 O.S. §2 and 47 O.S. §2-

9

102(D) of the Oklahoma statutes, a Plaintiff has an expectation of continued employment, and therefore a property interest. See *Teigen*, 511 F.3d 1072 (10th Cir. 2007). Further, as Defendants point out in their Second Motion, it is long established that such circumstances entitle Plaintiff to a notice and hearing prior to termination, which was not provided. See *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). Failure to due so constitutes a violation of due process. *Id*. Violation of Plaintiff's right to return to service under 47 O.S. §2-102(D) was similarly denied in violation of Plaintiff's Fourteenth Amendment rights to substantive due process where official conduct depirves a person of a liberty or property interest in an arbitrary manner. See *Dawson v. Bd. Of Cty. Commr's of Jefferson Cty*., 732 F.App'x 624, 634 (10th Cir. 2018), *cert denied*, ----- U.S. -----, 139 S.Ct. 862, 202 L.Ed.2d 569 (2019). As such, Defendants' Second Motion should be denied.

## II.   Plaintiffs Have Asserted Viable Due Process Claims Under Article II, Section 7 of the Oklahoma Constitution

In their Second Motion to Dismiss, Defendants rely on two propositions in support of their argument that Plaintiffs' Due Process claims under the Oklahoma Constitution should be dismissed: 1) That there is no express private right of action under the Oklahoma Constitution, and 2) that this court should declare that no cause of action lies due to a 2015 amendment to the OGTCA, even though Plaintiffs have no other avenue for recovering their claimed constitutional damages

where that amendment does not even apply. Neither is applicable and the Defendants' Second Motion to Dismiss should be denied.

Plaintiffs concede there is no express cause of action under the Oklahoma Constitution. However, Plaintiffs claims are viable under *Bosh v. Cherokee County Bldg. Auth.*, 305 P.3d 994, 1001 (Okla. 2013) and its progeny. Plaintiffs allege that Defendants violated their state constitutional rights under OKLA. CONST. Art. II, §7. In *Bosh*, the Oklahoma Supreme Court recognized a private right of action against a governmental entity for excessive force based on Art. II, §30 of the Oklahoma Constitution, notwithstanding the limits of the Oklahoma Governmental Tort Claims Act ("OGTCA"). *Id*. Since that time, the Supreme Court has stated that *Bosh* claims are limited to those circumstances where a plaintiff has "'no other avenue' for recovering his or her claimed constitutional injuries." *Id*. (citing *Perry v. City of Norman*, 341 P.3d 689, 692-693 (Okla. 2014). Plaintiffs assert that is exactly the case in this action.

Article II, Section 7 of the Oklahoma Constitution mirrors the Fourteenth Amendment to the United States Constitution, and a violation of this state constitutional right necessarily gives rise to a §1983 claim. See *Earles v. Cleveland*, 418 F.Supp.3d 879, 891 (W.D. Okla. 2019); see also *McCormick v. Halliburton, Co.*, 895 F.Supp.2d 1152, 1157 (W.D. Okla. 2012). The Oklahoma Supreme Court notes the same due process protections guaranteed by the Fourteenth Amendment are also guaranteed by the Oklahoma Constitution. *Id* (citing *E. Okla. Bld. & Constr. Trades Council v. Pitts*, P.3d 1008, 1012 (Okla.

2003)). In addition, this court has recognized that a Plaintiff is not precluded from bringing tort claims against government actors in their individual capacity for conduct outside the scope of their employment. *Id* at 891 (relying on *Koch v. City of Del City*, CIV-07-371-D, 2010 WL 1329819 at *11 (W.D. Okla. March 29, 2010)).

Defendants assert that legislative action in 2015 amended the OGTCA to specify that Oklahoma's immunity from suit extends to torts arising from alleged constitutional violations, relying on the Oklahoma Supreme Court's decision in *Barrios v. Haskell County Pub. Facilities Auth.*, 432 P.3d 233, 238 (Okla. 2018). Defendants' reliance upon the OGTCA is misplaced, and it is unclear whether Defendants understand Plaintiffs' claims. Plaintiffs have asserted bad faith conduct, even corrupt conduct, by Defendants in their Amended Complaint.

Both this court and the Supreme Court of Oklahoma are clear that the provisions of the OGTCA do not apply to actions brought against Defendants in their individual capacity for acts outside the scope of employment. *Earles*, 418 F.Supp.3d at 892 (citing *Koch*, 2010 WL 1329819 at *11). As set forth in paragraphs 145 and 164 of Plaintiffs' Amended Complaint, their Oklahoma constitutional claims are presented against the Defendants in their individual capacity. An act of the Defendant is not in the scope of employment if the employee acted maliciously or in bad faith. *Id* (citing *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003)). Further, the OGTCA expressly states that "'Scope of employment means performance by an employee <u>acting in good faith</u>….<u>but shall not include corruption or fraud</u>.'" 51 O.S. §152(12)(emphasis added).

Plaintiffs' allegations in their *entirety* are that the individual Defendants participated in corruption and/or fraud, and/or acted in bad faith in an effort to conceal criminal activity within the OHP and DPS, and they did so because Plaintiffs were engaging in the performance of their statutorily required job duties and the associated exercise of investigation and police authority required of them under the laws of the State of Oklahoma. The allegations presented against the individual defendants, as plead, therefore do not even fall within the definition of the course and scope of their duties, and therefore are not within the sovereign immunity protections of the OGTCA. Because that is the case, the *Bosh* claim remains available, and it has not been foreclosed by the legislature. Further, the the Plaintiffs have no other available recourse to remedy their damages under Oklahoma law. That being true, the Supreme Court of Oklahoma's position is that such claims fall squarely within the Plaintiffs' rights to recover under the Oklahoma constitution, and Defendants' Second Motion to Dismiss should be denied.

III.    **Plaintiffs' Wrongful Termination Claims Are Not Foreclosed by the Whistleblower Act**

Defendants' sole argument against the Plaintiffs' claims for wrongful termination in violation of public policy is that such claims are otherwise protected by the Oklahoma Whistleblower Act, 740 O.S. §840, et seq, and therefore Plaintiffs may not pursue their claims. However, the Plaintiffs' activity in the course of their employment, and as plead in their Amended Complaint, was not activity that is covered by or protected by the Whistleblower Act, and therefore there is no

adequate statutory remedy to protect the public policy goals set forth under 47 O.S. §2-117.

The Supreme Court recognizes wrongful termination claims allowing an at-will employee to bring a wrongful termination suit if he or she was terminated in violation of "a clear mandate of public policy" as articulated by constitutional, statutory or decisional law. *McCrady v. Oklahoma Dep't of Pub. Safety*, 2005 OK 67, 122 P.3d 473, 475 (citing *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24). In order to succeed on a *Burk* tort claim, there must be no statutory remedy that exists that is adequate to protect Oklahoma public policy. *Id*. Defendants assert that the adequate statutory remedy to protect the Oklahoma public policy goal in this instance is the Oklahoma Whistleblower Act.

Under the Oklahoma Whistleblower Act, specific actions taken by state employees are first necessary in order to receive protection, not merely or generally "reporting." The language of the act states as follows:

> No officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency…for:
>
> 1.   Disclosing public information to correct what the employee reasonably believes evidences a violation of the Oklahoma Constitution or law or a rule promulgated pursuant to law;
>
> 2.   Reporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;
>
> 3.   Discussing the operations and functions of the agency,

either specifically or generally, <u>with the Governor,
members of the Legislature, the print or electronic
media or other persons in a position to investigate
or initiate corrective action</u>; or

4.   <u>Taking any of the above actions</u> without giving prior
notice to the employee's supervisor or anyone else
in the employee's chain of command.

74 O.S. §840-2.5(B)(1-4)(underlining added). None of these protections under the

Whistleblower Act apply in any way to the activities alleged by the Plaintiffs in their

Amended Complaint.

First, it is significant to note that, as plead in the Amended Complaint, none

of Plaintiffs' actions in alleviating the violations of citizens' constitutional rights

associated with the civil asset forfeiture program were ever disclosed or reported

by the Plaintiffs as described in sections B(1) and B(2) above, nor were they

discussed in the media or with other persons in a position to initiate corrective

action as described in B(3). Defendants do not identify any assertion in the

Amended Complaint in which Plaintiffs allege that to be the case. As section B(4)

is reliant upon actions described in B(1-3), it is therefore inapplicable, and neither

Plaintiffs nor Defendants, in their Second Motion to Dismiss, have described any

such activity.

Second, Plaintiffs allege in their Amended Complaint that at all times, their

actions were efforts to comply with and meet the requirements of their duties as

heads of DPS and the Oklahoma Highway Patrol to investigate and discipline

unlawful and potentially criminal behavior within the agency and the Highway

Patrol as set forth in 47 O.S. §2-117. None of the plead activities of the Plaintiffs involved reporting, disclosure, or communication with the Governor, the media, or other persons with prosecutorial authority as required by the Whistleblower Act. In fact, as alleged in their Amended Complaint, Plaintiffs assert that Defendants learned of this information through their own, independent avenues, and/or that actions taken to terminate employees such as Joe Claro, resulted in reports to Defendants from people other than the Plaintiffs. Defendants have simply misunderstood or misconstrued the Plaintiffs' activities as plead in the Amended Complaint in an effort to force them into coverage of the Whistleblower Act, and therefore to their advantage, in support of their Second Motion to Dismiss. This is not sound interpretation of the law.

Plaintiffs allege in the Amended Complaint that they undertook administratively facilitated the investigation and corrective action within DPS/OHP, and doing so resulted in both the threat of reduced funds the state and its officers sought to use, or anticipated using, to the detriment of civil rights of citizens of Oklahoma. They also plead that they supported the prosecution of Trooper Troy German. Plaintiffs have plead, and assert that, in performing their duties to investigate, police and prosecute those matters as required under the laws of the State of Oklahoma, specifically 43 O.S. §2-117, public policy demands Defendants not interfere with such lawful and required activity, which does not fall within the provisions of the Whistleblower Act.

16

In addition, Plaintiffs plead that, after the dismissal of the Troy German criminal case, they engaged further in pursuit of the duties that are *required of them* under 43 O.S. §2-117. None of those activities as plead, or otherwise, involve any disclosure or reporting, or discussion with the Governor, the members of the legislature, the media, or others in position to investigate, which would be necessary to trigger whistleblower protection under the express language of 74 O.S. §840-2.5. Rather, Plaintiffs allege that Defendants terminated Plaintiffs for performing the police, investigation, and prosecution requirements of their job consistent with Oklahoma public policy, which risked identification of corrupt or unlawful activity, none of which were ever disclosed or generally "reported" by Plaintiffs. Defendants have now ignored this argument in both their First and Second Motions to Dismiss.

In their Second Motion to Dismiss, at page 18-19, Defendants assert that Plaintiffs made efforts *only* to expose corruption, citing Amended Complaint paragraphs 122 and 174. However, Plaintiffs have asserted that their actions were not to expose corruption, but that they were required to do so as part of the required police activities and obligations of those who head DPS. See Amended Complaint, ¶ 122 and 174. The fact that Defendants omit discussion of Plaintiffs allegations in regard to their required police power and investigative functions of the Commissioner reflects their desire for it not to be seen, as it is damaging to their argument. Further, in the same paragraph, Defendants omit by ellipses the clear requirement under the Whistleblower Act that any such activity was never done to

the governor or the media. See 74 O.S. §840-2.5(B)(1-4). Plaintiffs have not alleged any efforts to expose or report corruption to anyone, including anyone outside of themselves, the head of the agency. Defendants effectively ask the court to find that since the Plaintiffs themselves were "persons in position to investigator or initiate corrective action," their own actions in advancing the statutorily required duties of their job, make them whistleblowers under the Whistleblower Act, thereby depriving them of remedies in this action. Such argument is preposterous and no such self-reporting is contemplated or found in the Whistleblower Act.

It is Plaintiffs' contention and allegation that their actions to administratively facilitate and continue investigations into activity within DPS and the Oklahoma Highway Patrol were ongoing, as set forth in Plaintiffs' Amended Complaint. Plaintiffs also assert Defendants specifically took action against them in order to interfere with and eliminate this ongoing required administrative activity, interfere with the DPS requirements of 47 O.S. §2-117, and prevent §2-117 activity from taking place and also prevent information from the investigations from ever becoming known. Plaintiffs assert their activities in support of these investigations were not simply an altruistic endeavor for the good of the public, but that they were affirmatively required of them by law, by the public policy of Oklahoma, as set forth in 47 O.S. §2-117. Plaintiffs were terminated for this reason, absent any reporting, or disclosure as required to gain protection under the Whistleblower Act.

Finally, Plaintiff's reliance upon the Oklahoma Governmental Tort Claims Act is without merit. In order to maintain protection under the GTCA, a discretionary

termination must not merely be a termination, but the action taken must be in good faith. See 51 O.S. §152(12)("Scope of Employment" requires official to be acting "in good faith"). Plaintiffs have repeatedly alleged, and argued in their Response to Defendant's First Motion to Dismiss, that Defendants did not do so. As such, the protection argued by Defendants does not apply or, at minimum, such is a dispute to be reserved for discovery and aptly reconsidered upon a Motion for Summary Judgement.

The termination of the Plaintiffs in violation of public policy, where there is no adequate protection and Plaintiffs' actions as plead are not covered by the Whistleblower Act, gives rise to claims that are squarely within the category of those contemplated by *Burk*. These actions were not taken in good faith as required by the OGTCA. As such, Defendants' Second Motion to Dismiss should be denied.

## IV.   Plaintiffs Have Sufficiently Stated a Claim for Tortious Interference Against Defendants Keating, Nelson, and Claro

Defendants' assert that Plaintiffs have not asserted how Defendants interfered with Plaintiffs' employment. This defies clear reading of the Amended Complaint. Defendants suggest that Plaintiffs only assert a difference of opinion between themselves and Defendants, and therefore the Governor and his associates are free to rule with impunity. Such is absurd, and Plaintiffs have not failed to state a claim for Tortious Interference against these Defendants.

As noted above, the Tenth Circuit has long been clear that in reviewing a Motion to Dismiss, the court must view the record and *all reasonable inferences that might be drawn from it* in the light most favorable to the non-moving party, in this case, the Plaintiffs. *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1306 (10th Cir. 2008)(emphasis added). The Defendants ask this court to do the exact opposite, demanding instead that the Plaintiff affirmatively plead each and every possible inference at the outset of this action. Then, before re-urging protections of the OGTCA (which Plaintiffs have already responded to above) Defendants complain simply that the following, and only the following, matters are not sufficiently plead:

- Plaintiffs did not plead *how* Defendants Keating, Claro, and Nelson interfered with Plaintiffs' employment;

- Plaintiffs do not allege Defendants Keating, Claro, or Nelson terminated Plaintiffs or influenced the termination decision;

- Plaintiffs do not allege Keating's order to stop an investigation influenced the termination decision;

- Plaintiffs do not allege Nelson participated in the decision-making process;

- Plaintiffs do not allege Keating or Stitt[4] made the termination decision or allege that Keating knew reports by Claro were false;

---

[4] Defendants cannot dispute that Defendant Stitt is the Governor of the State of Oklahoma. Plaintiffs have not only plead that Defendant Stitt is the Governor of Oklahoma, but that under 47 O.S. §2-102(A)(1), the Commissioner of Public Safety shall be appointed by the Governor, which is Defendant Stitt. The Defendants were all terminated simultaneously, as part of the same decision, and all were publicly accused of termination for failure to meet REAL ID benchmarks, again as Plaintiffs have plead. It is a reasonable inference, to which the Plaintiffs are entitled, that Defendant Stitt played some role in the termination decision. See *T-Mobile*, 546 F.3d at 1306 (10th Cir. 2008). However, to the extent Plaintiffs must amend to satisfy their low pleading burden, an Amended Complaint asserting that Defendant Stitt, in coordination with the other Defendants, maliciously and wrongfully terminated Plaintiffs in coordination with the other Defendants, remedies this alleged shortcoming. See FED. R. CIV. P. 15(a).

- Plaintiffs do not assert the Defendants' actions were "malicious or wrongful" or that Defendants acted in bad faith, with gross recklessness, or outside the scope of their employment.

A clear, and even a cursory, reading of the Plaintiffs' Amended Complaint demonstrates these matters have been sufficiently plead, and that they are inherent to the Plaintiffs' claims. Further, Plaintiffs have repeatedly asserted and argued that Defendants' actions were in bad faith, again demonstrating Defendants' reliance upon "acting within the scope of [Defendants'] employment" is flawed.

Prior to 2018, Defendant Stitt had no experience as a government employer or leader in his community. It is a reasonable inference that both he, his Cabinet Secretary and son of a former governor, and the Cabinet Secretary's Deputy are interested in not having the appearance of corruption within DPS/OHP, and that they are interested in reelection, in the Governor's case, and maintaining a presence close to power within the highest administration in the State of Oklahoma, in the case of the others. See *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1306 (10th Cir. 2008)(Non-movant entitled to all reasonable inferences in consideration of a Motion to Dismiss). It would hardly be the first time that politicians would seek to avoid accountability and repercussion to their own benefit, and whether they did so is a question for a jury, not to be determined upon a Motion to Dismiss.

Once again, to the extent the Court agrees that Defendant's hyper-technical and improper reading of the standard of review should apply, this matter can be

included as a statement of fact in an Amended Complaint, and easily be remedied to assert simply that the actions taken by the Defendants was to protect the public image of the Governor and his administration and to allow the other Defendants to remain proximate to power and/or maintain their employment. See FED.R.CIV.P. 15(a). See also *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)(The purpose of [Rule 15] is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties").

Plaintiffs allege that Defendant Stitt appointed Defendant Keating and Defendant Nelson into positions in which they felt entitled to oversee the activities, with no actual statutory authority, of DPS and the Oklahoma Highway Patrol. See Amended Complaint, ¶¶30 and 32. Plaintiffs further allege that on August 28, 2019, when Defendant Claro was terminated by Plaintiffs, he immediately and knowingly advanced false reports to Defendants Keating and/or Stitt, and that this false information was used as the pretextual reasons to decapitate the leadership of DPS and the Oklahoma Highway Patrol in an effort to interfere with statutorily required efforts to investigate and eliminate corruption in the agency. See Amended Complaint ¶102. It is a reasonable inference to which Plaintiff is entitled to, that since Plaintiffs had communicated with Defendants Keating and Stitt about REAL ID and met all prior REAL ID benchmarks, Defendants Keating, Stitt, Claro, and Nelson, all knew the reports by a terminated and angry former employee were false. See Amended Complaint ¶¶ 100, 101, and 102

Plaintiffs expressly state in their Amended Complaint that Defendant Keating for the first time accused Plaintiffs and DPS of not meeting benchmarks for REAL ID only three days before their termination and two days after Defendant Claro advanced false information regarding REAL ID. See Amended Complaint ¶100. Plaintiffs allege that such accusations are false and never were true. See Amended Complaint ¶101. Plaintiffs similarly allege that Defendant Claro advanced such false allegations to Defendants Keating and Stitt only four days before their termination[5]. See Amended Complaint ¶102. Plaintiffs allege that these false allegations associated with the REAL ID program were the reason falsely identified as the basis for their terminations by Defendants. See Amended Complaint ¶101.

Since Defendant Stitt, the Governor of Oklahoma, is the only person with legal authority to terminate the Commissioner of Public Safety and who has no

---

[5] In a rather notable misconstruction of the Complaint as plead, Defendants in their FIRST MOTION TO DISMISS actually argue that "Pursuant to the allegations in the Complaint, Claro made such reports *because* he believed Stitt was unaware of improper actions taking place within DPS." Motion to Dismiss, pg. 24. Defendants' attribution of motive to Defendant Claro can be found nowhere in the Complaint and Plaintiffs make no such allegation at all. Plaintiffs expressly allege that Claro was terminated, that he made a veiled threat to Plaintiffs in stating to others "I'll be back," "What goes around comes around," and "There are other unapproved terminations the governor doesn't know about." Complaint, ¶99. To the extent the Defendants urge the court to believe the final statement by Claro is merely out of concern that there was any actual wrongdoing within DPS, such matter is unsupported by either the Plaintiffs' Complaint or evidence, which is not appropriately considered for purposes of a Motion pursuant to FED. R. CIV. P. 12(b)(6). Moreover, it deliberately ignores the express assertion by the Plaintiffs that Claro sought to seek revenge and/or obtain his job back by advancing such reports. Complaint ¶99. While Plaintiffs again note Claro's motives and self-interest can be inferred from the actions, Plaintiffs did include both allegations in their Amended Complaint, and they also plead Defendant Claro was shortly thereafter returned to employment at DPS, his self-interest fulfilled by his interference with Plaintiffs' employment relationship. Defendants have removed this argument from their SECOND MOTION TO DISMISS. However, the change in position demonstrates the nuance in good faith and bad faith motivations by the Defendants, and why such positions should not so easily be provided immunity under the OGTCA as "good faith" activities within the scope of employment. Defendants entire argument that "actions related to DPS matters, including investigations, were within the scope of Keating and Nelson's employment and that Plaintiffs have not adequately pleaded otherwise" is untrue. As noted herein, state law specifically removes the termination of the Chief of Patrol from the duties of the governor and, no matter what the Governor's authority is, his actions are not within the scope of his duties if he acted in bad faith. Plaintiffs have alleged just that.

authority to terminate the head of the Oklahoma Highway Patrol, it is reasonable to infer from Defendant Claro's false reports to Defendants Keating and/or Defendant Stitt four days before their termination, and Defendant Keating's false accusation that REAL ID benchmarks were not being met only two days before termination, and Defendant Nelson's involvement in the termination itself, that the Defendants all engaged in communications from August 28, 2019 until September 2, 2020. It is further reasonable to infer that these communications, together with Defendants' knowledge of the DPS/OHP investigations and their desire to interfere with and conclude those matters, which Plaintiffs have plead in their Amended Complaint, resulted in Plaintiffs' bad faith terminations at the hands of Defendants acting outside the course and scope of their employment. See 47 O.S. §2-101; see also 47 O.S. §2-105; see also 51 O.S. §152(12). Defendants' position that Plaintiffs have not sufficiently plead their claim of tortious interference with an employment relationship is specious. Further, as seen herein, each of the alleged pleading deficiencies may easily be remedied with an Amended Complaint, which Plaintiffs seek herein, as further set forth below.

### V. Plaintiffs Have Sufficiently Plead A Due Process Claims Due to Publication of False Statements to the Media and Others

Defendants' only argument against Plaintiffs' Due Process claim related to statement made by Defendant Stitt to the media seem to be that since the statements were true and related to "poor performance" they are therefore protected. Such is inaccurate.

24

As Plaintiffs have plead, the statements made were knowingly false. The Plaintiffs at all times complied with REAL ID compliance efforts and met every benchmark. Defendants cite to no case in support of their Second Motion to Dismiss in which the Defendant accused of making the defamatory or impugning statements knowingly and willfully told untruths about the Plaintiffs, as Plaintiffs have alleged herein. As such, Defendants cite to no compelling authority to dismiss the Plaintiffs' due process claims.  As such, their Second Motion to Dismiss should be denied.

## **CONCLUSION**

A review of the Amended Complaint as plead by the Plaintiffs demonstrate their claims are well-plead. Taking their allegations as true, together with all reasonable inferences, as required for the Court's consideration of a Motion to Dismiss, their claims should not be dismissed at this time.  Defendants' Second Motion to Dismiss should be denied.

Respectfully submitted,

/s/Dustin Hopson
Dustin Hopson, OBA #19485
Hopson Legal, LLC
119 N. Robinson Ave., Ste. 650
Oklahoma City, OK 73102
Telephone: (405) 673-7560
dustin@hopsonlawfirm.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2020, I transmitted the foregoing document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. Kirk Turner
Jacob S. Crawford
McAfee & Taft
Two West Second Street, Ste. 1100
Tulsa, OK 74103
Kirk.turner@mcafeetaft.com
Jake.crawford@mcafeetaft.com
ATTORNEYS FOR DEFENDANTS

Ronald T. Shinn, Jr.
Michael A. Duncan
McAfee & Taft
211 North Robinson, 10th Floor
Oklahoma City, OK 73102
Ron.shinn@mcafeetaft.com
Alex.duncan@mcafeetaft.com
ATTORNEYS FOR DEFENDANTS

/s/ Dustin Hopson