# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BILLY D. "RUSTY" RHOADES III, an individual;<br>(2) MEGAN L. SIMPSON, an individual; and<br>(3) MICHAEL S. HARRELL, an individual,<br><br>      Plaintiffs,<br><br>v.<br><br>(1) THE STATE OF OKLAHOMA, *ex rel.* GOVERNOR KEVIN STITT;<br>(2) THE STATE OF OKLAHOMA, *ex rel.* THE DEPARTMENT OF PUBLIC SAFETY;<br>(3) KEVIN STITT, an individual;<br>(4) CHIP KEATING, an individual;<br>(5) JASON NELSON, an individual; and<br>(6) JOE CLARO, an individual,<br><br>      Defendants. | Case No. CIV-20-761-G |

## DEFENDANTS' REPLY IN SUPPORT OF SECOND PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

W. Kirk Turner, OBA No. 13791  
Jacob S. Crawford, OBA # 31031  
MCAFEE & TAFT  
A PROFESSIONAL CORPORATION  
Two West Second Street, Suite 1100  
Tulsa, Oklahoma 74103  
Telephone (918) 587-0000  
Facsimile (918) 599-9317  
kirk.turner@mcafeetaft.com  
jake.crawford@mcafeetaft.com  

Ronald T. Shinn, Jr., OBA # 19569  
Michael A. Duncan, OBA # 32382  
MCAFEE & TAFT  
A PROFESSIONAL CORPORATION  
211 North Robinson, 10th Floor  
Oklahoma City, Oklahoma 73102  
Telephone: (405) 235-9621  
Facsimile: (405) 235-0439  
ron.shinn@mcafeetaft.com  
alex.duncan@mcafeetaft.com  

**ATTORNEYS FOR DEFENDANTS**

January 4, 2021

## ARGUMENT

I. **Rhoades Fails to State a Due Process Claim Under § 1983.**

In support of Rhoades' due process claim, Plaintiffs point to two statutes—74 Okla. Stat. § 2 (Oklahoma's general removal statute) and 47 Okla. Stat. § 2-102(D). The question before the Court is whether these statutes limit the Governor's power to remove executive officers in a way that gives Rhoades a property interest in continued employment, thereby entitling him to due process. An analysis of applicable authorities confirms the answer is "no" with respect to both statutes.

A. **As Interpreted by Oklahoma Courts, the Removal Statute—74 Okla. Stat. § 2—Gives the Governor the Exclusive Discretion to Remove the DPS Commissioner Without Notice or Hearing, and the Exercise of that Discretion Is Beyond Judicial Review.**

In evaluating Rhoades' due process claim, this Court is obliged to follow the Oklahoma Supreme Court's decisions interpreting 74 Okla. Stat. § 2 and similarly worded statutes. *See Mitchell v. King*, 537 F.2d 385, 389 (10th Cir. 1976) (holding that, in analyzing whether state law creates a cognizable property interest, "the interpretation and construction of state statutes (and constitutions) by the highest courts of the states will be followed by the federal courts unless those interpretations are inconsistent with fundamental principles of liberty and justice").

In *Mitchell*, a former member of the board of regents of the New Mexico museum filed suit alleging the governor removed him as a regent without notice or hearing. *Id*. at 386-387. The governor removed the regent for "neglect of duty and malfeasance,"

1

pursuant to Article V, Section 5 of the New Mexico Constitution (*id.*), which provided at the time that the governor could "remove any officer appointed by him for incompetency, neglect of duty or malfeasance in office." *Id.* at 389.[1]  The former regent brought a Section 1983 claim against the governor alleging, among other things, that his summary dismissal violated his right to due process under the U.S. Constitution. *Id.* at 387. Dismissing the regent's due process claim, the trial court cited a New Mexico Supreme Court decision interpreting the constitutional provision to give the governor discretion to summarily remove appointed officials "without hearing or notice" and held that the governor's exercise of this discretion was not subject to judicial review. *Id.* at 389. The Tenth Circuit affirmed the dismissal, holding that the New Mexico constitutional provision, as construed and interpreted by New Mexico's highest court, allowed the governor to remove the regent without notice or hearing, foreclosing his due process claim. *Id.*

This Court should reach the same result here. In a line of cases dating back to pre-statehood, Oklahoma courts have held the removal statute gives the Governor exclusive and unfettered discretion to remove subordinate executive officers he appoints—without notice or hearing.  These cases go even further, opining that the courts are powerless to second-guess the Governor's exercise of this discretion.

This rule was first adopted in *Cameron v. Parker*, where the Oklahoma territorial

---

1 This constitutional provision is identical to 74 Okla. Stat. § 2, which provides "The Governor shall have power to remove any officers appointed by him, in case of incompetency, neglect of duty, or malfeasance in office."

court upheld the territorial governor's removal of the superintendent of public instruction and *ex officio* auditor without notice or hearing.[2] At issue in *Cameron* was the predecessor statute to 74 Okla. Stat. § 2 (St. 1893, § 5976), which was identical to its modern counterpart.  Noting "[t]he authorities are all to the effect that a grant of the power to remove, either for cause or at discretion, carries with it the exclusive power to hear and decide," the Court held the governor's exercise of his statutory discretion to remove for cause was not reviewable by the courts "with respect to the cause, or to its sufficiency or existence, or otherwise." *Id.* at 37.

The *Cameron* rule was later applied by the Oklahoma Supreme Court in *Bynum v. Strain*, where the Court upheld the Governor's summary removal of a bank commissioner without notice or hearing.  *See* 218 P. 883 (Okla. 1923).[3] The Court held that because the statute gave the removal power to the Governor without imposing any limitations on his use of that power, the judiciary had no authority to review the Governor's decision to remove the bank commissioner, including the sufficiency of "cause" or the manner of

---

[2] *See Cameron v. Parker*, 38 P. 14, 17 (Okla.Terr. 1894) (quoting the removed officer's pleadings that he "had no notice of any further action or proceedings" by the governor against him and that "at no time had he a hearing upon said alleged charges" before the governor "or any opportunity to appear and present evidence or defend himself against the same.")

[3] In *Bynum*, the Governor did not rely on the general removal statute (74 Okla. Stat. § 2) but instead the specific banking statute, which allowed the Governor to remove the commissioner "for cause."  Given the similarities between the two statutes, however, the Court's reasoning in *Bynum* should apply with equal force to this case.

removal. *Id*. at 885.[4]

  In explaining its decision, the *Bynum* Court reasoned:

> [A]n appointee to an appointive position in a subordinate branch of the special sphere of duties and responsibilities of the Chief Executive . . . is selected by the Chief Executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public, and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the Chief Executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the Chief Executive, and, in the absence of express authority, the judiciary has nothing to do with the Chief Executive's judgment, conscience, sense of duty, or responsibilities.

*Id*. at 889.

  Mindful of these considerations, the *Bynum* Court declined to interfere in the Governor's exercise of his executive authority and dismissed the former banking commissioner's lawsuit. *Id*. at 891.

  The *Bynum* decision remains precedential in determining the scope of the Governor's removal powers. In *Hall v. Tirey*, the Court distinguished *Bynum* from the facts in that case to conclude that the removal of a member of the State Board for Property and Casualty Rates pursuant to 74 Okla. Stat. § 2 was subject to judicial review. *Hall v. Tirey*, 501 P.2d 496, 501 (Okl. 1972). The *Hall* Court reasoned that the judicial

---

4 *Id*. at 890 ("The Legislature created the department in question, created the appointive position in question, [gave] the Governor the appointing power and authorized the Governor to remove the appointee for cause, and furthermore . . . authorized the Governor to determine the sufficiency of cause. . . [t]his takes it away from the courts." (emphasis added).

non-interference rule in *Bynum* was limited to cases involving the removal of appointed officers subordinate to the Governor whose principal duties are "executive" in nature, as opposed to "quasi-legislative" or "quasi-judicial." *Id*. Holding the "State Board of Property and Casualty Rates is primarily a quasi-legislative and quasi-judicial administrative body," the *Hall* Court determined that the rule in *Bynum* was therefore inapplicable. *Id*.

Here, there can be little doubt that the rule in *Bynum* (even as narrowed by *Hall*) applies to Rhoades' removal as DPS Commissioner. Like the banking commissioner in *Bynum*, the DPS Commissioner is subordinate to the Governor and his principal duties are executive in nature. The enabling legislation for DPS confirms that the "[t]he Governor shall be the chief officer of the Department of Public Safety and the Commissioner of Public Safety shall execute the lawful orders of the Governor and shall be responsible to him for the operation and administration of said Department." 47 Okla. Stat. § 2-101. The DPS Commissioner's duties principally consist of enforcing the Oklahoma Highway Safety Code and all laws regulating the operation of vehicles or the use of the highways. *See* 47 Okla. Stat. § 2-108(A); *see also* Okla. Op. Atty. Gen. No. 2006-25 (July 5, 2006). The DPS Commissioner's role is thus executive in nature and subordinate to Oklahoma's chief executive, the Governor, who under the Oklahoma Constitution is charged with "caus[ing] the laws of the State to be faithfully executed." OK Const. Art. 6 § 8.

While the Oklahoma Legislature has the authority to limit the Governor's broad discretion and power to remove appointees, the Legislature chose not to do so here. The

5

DPS enabling legislation does not, for example, set a fixed term of office for the DPS Commissioner. Nor does it enumerate causes for removal, or select an agency independent from the Governor to hear and determine the sufficiency of the causes. *See Wentz v. Thomas*, 15 P.2d 65, 86 (Okla. 1932) McNeill, J. (specially concurring) (listing the ways the Legislature may, if it chooses, properly restrict the Governor's discretion to remove executive officers for reasons of policy). Nor does it contain any other language that might manifest a legislative intent to limit the Governor's power of removal.[5] The absence of such limiting language reflects a clear legislative decision not to limit the Governor's power to remove the DPS Commissioner.

As in *Mitchell*, these Oklahoma authorities establish that Governor Stitt had exclusive discretion to determine whether sufficient cause existed to terminate Rhoades' employment. *See Cameron*, 38 P. at 17; *Bynum*, 218 P. at 891. He further had the power to summarily remove Rhoades as DPS Commissioner without notice or hearing and such removal is not subject to judicial review. *Id.* This Court should follow these precedents. *Mitchell*, 537 F.2d at 389. As a result, Rhoades' due process claim must be dismissed.

### B. 47 Okla. Stat. § 2-102(D) Does Not Create a Property Interest in Continued Employment Because Rhoades Pleaded He was Terminated.

Plaintiffs make no effort to rebut the fact that because Rhoades pleaded he was "terminated" from his position, he was disqualified from returning to his earlier position

---

5 *Contrast* 47 Okla. Stat. § 2-101 *with* 68 Okla. Stat. § 102 ("The members of the Tax Commission shall not be subject to removal from office at the will and pleasure of the Governor, but may be removed only for cause" *and* 29 Okla. Stat. § 3-104 (stating the Director of Wildlife Conservation "shall be removed only for cause and after public hearing by the Commission").

within DPS under the plain language of the statute. Because Rhoades was expressly disqualified, his due process claim based on 47 Okla. Stat. § 2-102(D) must be dismissed.

### C. Even if the Court Determines Rhoades Had a Right to Due Process, that Right Was Not "Clearly Established" at the Time of His Termination, and Thus the Individual Defendants Have Qualified Immunity.

Based on the Tenth Circuit's decision in *Mitchell* and the Oklahoma Supreme Court's decision in *Bynum* and related cases, it cannot be said that any right to due process conferred on Rhoades by 74 Okla. Stat. § 2 was "clearly established," or "beyond debate," when he was terminated. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). Nor can it be said that it was "clearly established" that Rhoades had a right to return under 47 Okla. Stat. § 2-102(D), when Plaintiffs themselves allege he was "terminated" from his position. *See Duncan v. Gunter*, 15 F.3d 989, 992 (10th Cir. 1994) (holding official had qualified immunity because "one may reasonably interpret the statute" to permit the official's actions, and therefore "the law did not clearly prohibit" official's conduct) (affirming dismissal of complaint). As such, the individual Defendants are entitled to qualified immunity, which is an independent and sufficient basis to dismiss Rhoades' due process claim based on 74 Okla. Stat. § 2 and 47 Okla. Stat. § 2-102(D).

### II. Rhoades' and Harrell's Due Process Claims Brought Under the Oklahoma Constitution Lack Any Legal Support.

In their Response, Plaintiffs double-down on the Oklahoma Supreme Court's decision in *Bosh* as the basis for their purported due process claims under the Oklahoma Constitution. Yet, Plaintiffs concede they can point to <u>no authority</u> (state or federal) extending *Bosh* to recognize a private right of action for the employment-related claim

7

Plaintiffs are asserting in this case. This Court has already rejected the precise state-law claim that Plaintiffs are asserting here. *See Earles v. Cleveland*, 418 F. Supp. 3d. 879, 890-91 (W.D. Okla. 2019) (dismissing plaintiff's due process claim under the Oklahoma Constitution based on her summary termination from employment because the Oklahoma Constitution does not create a private cause of action for such a claim) (DeGiusti, J.). Plaintiffs' due process claims under the Oklahoma Constitution should be dismissed.

### III. Plaintiffs' Wrongful Termination Cause of Action Is Premised on Reporting Government Misconduct and Therefore Falls Squarely Under the Whistleblower Act, Which Precludes Their Claim.

Plaintiffs contend that the Whistleblower Act does not preclude their wrongful termination claim because they did not engage in any activities protected by the Whistleblower Act. This contention is contradicted by Plaintiffs' own allegations in the Amended Complaint.

The Amended Complaint alleges that Plaintiffs were terminated in "retaliation" for "their efforts to *expose* corruption by people associated with the OHP and/or DPS." Am. Compl. ¶¶ 174, 122 (emphasis added). Those efforts include providing information to "Troop Z"—which Plaintiffs describe as the "internal criminal ***investigation*** unit of OHP and DPS" (*id.* at ¶ 65) (emphasis added)—for it to investigate the alleged problems with the civil asset forfeiture program (Am. Compl. at ¶52) and the blackmail attempt by Captain Troy German (Am. Compl. at ¶63). These referrals plainly constitute "reporting . . . violation[s] of . . . state or federal law" and "discussing the operations and functions [of DPS]," including purported government misconduct, with "persons in a position to investigate or initiate corrective action"—both protected activities under the

8

Whistleblower Act. *See* 74 Okla. Stat. § 840-2.5(B)(2) and (B)(3).

The Amended Complaint is likewise replete with allegations that Plaintiffs discussed the operations of DPS and the purported misconduct with each other and others within the Department. *See*, *e.g.*, Am. Compl. at ¶¶41, 44, 51, 54, 75. These discussions likewise fall within the scope of the Whistleblower Act.

In their Response, Plaintiffs imply that reporting the allegations to Troop Z is insufficient because Troop Z lacks "prosecutorial authority." That phrase appears nowhere in § 840.25(B)(2)-(3) and Plaintiffs provide no reason to believe the Oklahoma Legislature intended to limit the protections of the Whistleblower Act to only reports/discussions with prosecutors. Plaintiffs' argument should be rejected.

Plaintiffs also argue the Whistleblower Act does not apply here because the actions they took (and for which they were allegedly terminated) "were affirmatively required of them by law [and] by the public policy of Oklahoma" and "not simply an altruistic endeavor for the good of the public." In other words, Plaintiffs are contending that the Whistleblower Act excludes from its protections those government officials who have an independent legal or contractual duty to report misconduct. Plaintiffs provide no support for this proposition or any reason why the Legislature would have intended such a nonsensical result. Regardless of Plaintiffs' subjective intent or how they choose to characterize their conduct, the simple fact remains that they engaged in activities protected by the Whistleblower Act. Because Plaintiffs failed to take advantage of the remedies afforded by the Act, their wrongful termination claim must be dismissed.

## IV. Plaintiffs Fail to Plausibly Allege Keating and Nelson Acted With Malicious Intent and Therefore the Tortious Interference Claim as to Keating and Nelson Should Be Dismissed.

The single biggest flaw with Plaintiffs' tortious interference claim is that they fail to plead in a non-conclusory manner that Keating or Nelson acted with malicious intent—more specifically that they acted to further their own private interests, as opposed to the interests of their employer. *See Kinsey v. Cable Meat Center, Inc.*, CIV-07-0704-HE, 2007 WL 9711147, at *2 (W.D. Okla. Oct. 10, 2007). The best Plaintiffs can do is to argue Keating and Nelson wanted to make their boss (Gov. Stitt) look good and "maintain proximate to power." This strained rationale fails to cross the threshold of plausibility. Plaintiffs have not plausibly alleged that Keating and Nelson were personally implicated in the alleged misconduct at DPS or that they stood to lose their cabinet positions if Plaintiffs were not terminated. At best, Plaintiffs allege that Keating and Nelson, as agents of the Governor, executed Gov. Stitt's order to terminate Plaintiffs for what Plaintiffs believe was a wrongful reason. Under Oklahoma law, that is not enough to hold them personally liable. *Id.* As a result, this Court should, at a minimum, dismiss the tortious interference claims against Keating and Nelson.

## V. Plaintiffs Fail to Plausibly Allege a Due Process Violation Against Defendant Stitt for His Alleged Statements Critical of their Job Performance.

Plaintiffs fail to address well-established Tenth Circuit precedent that statements critical of one's job performance are not sufficiently stigmatizing to support a due process claim. As such, Plaintiffs' Seventh Cause of Action should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the challenged causes of action should be dismissed.

        Respectfully submitted,

        */s/ Michael A. Duncan*
        W. Kirk Turner, OBA No. 13791
        Jacob S. Crawford, OBA # 31031
        MCAFEE & TAFT, A PROFESSIONAL CORPORATION
        Two West Second Street, Suite 1100
        Tulsa, Oklahoma  74103
        Telephone (918) 587-0000
        Facsimile (918) 599-9317
        kirk.turner@mcafeetaft.com
        jake.crawford@mcafeetaft.com

        Ronald T. Shinn, Jr., OBA # 19569
        Michael A. Duncan, OBA # 32382
        MCAFEE & TAFT, A PROFESSIONAL CORPORATION
        211 North Robinson, 10th Floor
        Oklahoma City, Oklahoma  73102
        Telephone:  (405) 235-9621
        Facsimile:  (405) 235-0439
        ron.shinn@mcafeetaft.com
        alex.duncan@mcafeetaft.com

        **ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, I transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Dustin J. Hopson, Esq.
Hopson Legal, LLC
512 NW 12th Street
Oklahoma City, OK  73103
dustin@hopsonlawfirm.com

**Attorney for Plaintiffs**

                                        */s/ Michael A. Duncan*