UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) BILLY D. "RUSTY" RHOADES III, an individual;
(2) MEGAN L. SIMPSON, an individual; and
(3) MICHAEL S. HARRELL, an individual,

Plaintiffs,

v.

(1) THE STATE OF OKLAHOMA, *ex rel.* GOVERNOR KEVIN STITT;
(2) THE STATE OF OKLAHOMA, *ex rel.* THE DEPARTMENT OF PUBLIC SAFETY;
(3) KEVIN STITT, an individual;
(4) CHIP KEATING, an individual;
(5) JASON NELSON, an individual; and
(6) JOE CLARO, an individual,

Defendants.

Case No. CIV-20-761-R

**PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS' REQUEST TO SET STATUS CONFERENCE AND/OR STRIKE PLAINTIFFS' FINAL WITNESS AND EXHIBIT LIST**

Plaintiffs, Billy D. "Rusty" Rhoades III, Megan L. Simpson, and Michael S. Harrell (collectively, "Plaintiffs") hereby respond and object to Defendants' Request to Set Status Conference and/or Strike Plaintiffs' Final Witness and Exhibit Lists (Doc. No. 65) as follows:

Defendants complain that Plaintiffs' Final Witness and Exhibit List are too voluminous. Defendants want the Court to believe that they are caught

1

completely off guard by these lists and have no idea as to what claims Plaintiffs will make at trial. Defendants feigned prejudice is grossly misrepresented.

First, it cannot be said that Defendants are unfamiliar with the evidence Plaintiffs intend to advance at trial. Defendants filed two Motions for Summary Judgment. In Response to the First Motion (Doc. No. 54), Plaintiffs set forth, at least in part, their theory of the case. In doing so, Plaintiffs identified 13 different individuals and their role in these proceedings. Plaintiffs' Response to the second Motion for Summary Judgment is not yet due, but Plaintiffs anticipate it too will provide a similar summary and roadmap of the Plaintiffs' claims and how they intend to present those at trial. Those Responses also demonstrate what information the various witnesses have to share at trial.

Second, in the call between counsel that Defendants reference in paragraph 11, Plaintiffs stated that they anticipate that the witnesses listed as "expected" to more than likely be called would be the only ones actually called but that all witnesses were listed because there were still outstanding discovery issues. Plaintiffs clearly advised Defendants that they doubted there would be a need for 73 witnesses, and that Plaintiffs followed the Courts' directive in identifying those that were "expected to be called". Many of the witnesses, including those identified as "expected" or "may" are witnesses whose testimony can be completed in 10-15 minutes. As Defendants note, Plaintiffs consented to the 7-day estimated time for trial. Plaintiffs did so recognizing that not all witnesses will take an appreciable amount of time on the stand. Given the history

2

of counsel's discussions and the litigation to date, it is disingenuous for Defendants to claim they are actually fearful of 73 witnesses being called at trial.

Furthermore, all of the witnesses identified on Plaintiffs' list were identified in deposition testimony. Rob Mikell is identified as the Vice President for INDEMIA, the contractor working on the REAL ID implementation, and his knowledge/relation to the case was discussed in Jason Nelson's deposition. Plaintiffs' acknowledge that there is a typo in his last name and that the witness is Rob Michael; however, given the identification of his role, Defendants should have recognized this or at least reached out for clarification. Kathy Mires is Chip Keating's secretary, and her role was testified to in both Keating's and Nelson's depositions. There is nothing in the discovery code that requires Plaintiffs to provide Defendants with record citations for the scope of each witnesses' role; yet, such exacting particularly seems to be the standard Defendants ask this Court to impose. The fact that most of the witnesses are employees of the State of Oklahoma, who counsel represents as a party, makes Defendants' claims that these witnesses are a complete mystery causing prejudice even more ridiculous.

Moreover, Plaintiffs filed their Witness and Exhibit List on January 17, 2023, 45 days prior to the discovery cut-off deadline. If Defendants truly had questions as to Plaintiffs' witnesses or their role in the case, Defendants could have issued written discovery requests seeking clarification. Defendants, in their Motion for Protective Order, want this Court to find that Interrogatories are a sufficient manner to get testimony from a key, named party. However, they fail to

recognize that interrogatories could similarly have resolved any mystery Defendants claim exists.

Additionally, some of the witnesses will be necessary only if the Court does not require Governor Stitt to testify. One of the key issues in this case relates to the basis of Stitt's decision to terminate Plaintiffs. If Stitt testifies, then the Plaintiffs can quickly and efficiently present evidence of what Stitt knew, where it learned the information, and what motivated his decisions. If the Court does not permit Stitt to testify, then Plaintiffs will need particular witnesses to testify as to the information they shared with Stitt. Defendants' Motion for Protective Order (Doc. No. 51) remains pending, preventing Plaintiffs from making final determinations as to witnesses.

The parties sued include the Department of Public Safety and State of Oklahoma, both of whom are represented by counsel. The witnesses identified as being in "c/o" counsel, work for these entities. Accordingly, Plaintiffs are prohibited from communicating with persons known to be represented by counsel. Rules of Professional Conduct, Rule 4.2. If counsel is taking the position that it does not represent these state employees other than those identified as parties, then Plaintiffs can certainly amend to provide alternative contact information. However, in doing so, Defendants must admit that they are also giving up any claim that those persons are represented and unavailable to Plaintiffs without going through counsel. Defendants cannot both claim representation of and privilege with the witnesses and complain that their contact

information is missing. Moreover, aside from the fact that they have all been referenced in deposition testimony, counsel, through their clients, have the contact information for these witnesses, so there is no prejudice, harm, or surprise caused by Plaintiffs' identification of state employees as being represented by counsel for the state.

There should not be "dozens" of new names unrecognized by Defendants, as all of the persons witnesses were identified in deposition testimony. A simple review of the transcript word indices would identify each person listed on Plaintiffs' list and give insight into the scope of their testimony. It is also believed that a brief consult of the list with the named Defendants would provide counsel with the information they claim they lack.

As to the Exhibits, Defendants seem to complain about the "bulk-listed" documents. First, the "bulk" exhibits are produced by Defendants and identified as such, so there should no prejudice or surprise as to their contents. Second, Defendants' list (Doc. No. 61) similarly lists "bulk" exhibits. *See, e.g.,* Doc. 151, all deposition exhibits (p. 15, No. 138), all Plaintiffs' exhibits (p. 15, No. 139), all discovery production (No. 15, No. 140), and all documents received from Subpoenas (p. 15, No. 141). At this stage in the proceedings, such "bulk" exhibits are common and are the best way for the parties to protect themselves until discovery is complete and Motions are ruled upon. It cannot said that Defendants will be prejudiced, harmed, or surprised by the introduction of their own discovery responses.

Although the discovery cut-off deadline is nearing, the Pretrial Report is not due until March 27th. Defendants have not inquired of Plaintiffs as to their willingness to conduct discovery between March 1st and March 27th. The fact that Defendants have a Motion relating to discovery pending, necessarily implies that discovery may continue past the March 1st deadline.

Plaintiffs maintain that their list complies with the requirements and intent of a final witness and exhibit list. Defendants' complaints are unfounded and not supported by the record. The court can, and in counsel's experience will, strike those witnesses and exhibits that are not properly identified on the final pretrial report. The pretrial report will govern the proceedings at trial. Plaintiffs' witness and exhibit list properly fulfilled its purpose in alerting Defendants to those persons and documents that may be used at trial so that, if they so desire, Defendants can investigate the role of those persons and documents.

Defendants take an unfounded leap that they must "hope" there are no exhibits that will surprise Defendants at trial. Plaintiffs represent that everything they intend to use has been produced or will be through the remaining discovery. Furthermore, Plaintiffs recognize that the Court will not allow them to introduce documents at trial that were not timely produced. When exhibits are exchanged in advance of trial, the parties will check to ensure that nothing is exchanged that was not previously produced and, should the trial exhibits contain any such

document, the parties have the opportunity to present the same to the Court. Defendants' fear is unfounded.

Defendants either have two goals: to deprive Plaintiffs of their day in Court or to have Plaintiffs do their homework for them. The Court's Scheduling Order is clear: identify witnesses and exhibits at this stage or be barred from calling them at trial. At the time of the filing of the witness and exhibit lists, there remained pending motions and the anticipation of additional Motions for Summary Judgment. The issues in the case are unresolved, so Plaintiffs must prepare their lists in anticipation of multiple contingencies, depending on the Court's rulings. Ultimately, the parties will file a Pretrial Conference Order, which will supersede all prior pleadings and provide the Court and parties with the final roadmap for trial. Witness and exhibit lists, especially when filed prior to the completion of discovery and ruling on pending motions are not designed to be that roadmap. They are designed to prevent surprises. Defendants want to limit the case to their claim that Stitt fired Plaintiffs for failure to meet REAL ID benchmarks. Plaintiffs will demonstrate that not only were the REAL ID benchmarks met but that the claim is pretext to a political plan to protect and hide corruption with the Department of Public Safety. Proving corruption necessarily requires more evidence than demonstrating that timelines were met. Additionally, since, as Defendants note, the Plaintiffs have the burden of proof and must provide evidence of damages, Plaintiffs necessarily have more witnesses and exhibits than any defendant feels is necessary.

          Respectfully submitted,

          /s/ Dustin J. Hopson
          Dustin H. Hopson, OBA #19485
          Amy S. Neathery, OBA #20344
          Hopson Legal LLC
          119 N. Robinson Ave., #650
          Oklahoma City, OK 73102
          Telephone: (405) 673-7560
          Email: dustin@hopsonlawfirm.com
          Email: amy@hopsonlawfirm.com
          *Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2023, I transmitted the foregoing document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. Kirk Turner
Jacob S. Crawford
McAfee & Taft
Two West Second Street, Ste. 1100
Tulsa, OK 74103
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com
ATTORNEYS FOR DEFENDANTS

Ronald T. Shinn, Jr.
Michael A. Duncan
McAfee & Taft
211 North Robinson, 10th Floor
Oklahoma City, OK 73102
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com
ATTORNEYS FOR DEFENDANTS

          /s/ Dustin J. Hopson
          Dustin J. Hopson