**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) BILLY D. "RUSTY" RHOADES III, an individual;
(2) MEGAN L. SIMPSON, an individual; and
(3) MICHAEL S. HARRELL, an individual,

Plaintiffs,

v.

(1) THE STATE OF OKLAHOMA, *ex rel.* GOVERNOR KEVIN STITT;
(2) THE STATE OF OKLAHOMA, *ex rel.* THE DEPARTMENT OF PUBLIC SAFETY;
(3) KEVIN STITT, an individual;
(4) CHIP KEATING, an individual;
(5) JASON NELSON, an individual; and
(6) JOE CLARO, an individual,

Defendants.

Case No. CIV-20-761-R

**DEFENDANTS CHIP KEATING'S AND JASON NELSON'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

W. Kirk Turner, OBA # 13791
Jacob S. Crawford, OBA # 31031
McAfee & Taft
A Professional Corporation
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone (918) 587-0000
Facsimile (918) 599-9317
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com

Ronald T. Shinn Jr., OBA # 19569
Michael A. Duncan, OBA # 32382
McAfee & Taft
A Professional Corporation
211 North Robinson, 10th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com

Attorneys for Defendants

March 1, 2023

Plaintiffs have had two years to conduct discovery and depositions. Days from the discovery cutoff, Plaintiffs respond to this summary judgment motion and agree that the legal authorities set forth in Defendants' motion govern their tortious interference claim. Despite knowing the law, their response consists of unsupported speculation of "epic" conspiracy theories involving Defendants and various elected officials. Plaintiffs fail to present evidence from which a reasonable jury could infer their various theories warrant trial. No evidence exists that Keating or Nelson acted with a malicious, bad-faith intent to interfere with Plaintiffs' employment. And there is no evidence from which a reasonable jury could find Keating and Nelson acted for any reason besides according to their statutory and assigned duties. Keating and Nelson are entitled to summary judgment.

## I. Plaintiffs are not entitled to an inference that Keating and Nelson knowingly acted against the interests of the State of Oklahoma and in furtherance of their own personal interests.

Plaintiffs acknowledge their tortious interference claim fails unless they satisfy the exception in *Martin v. Johnson*, 975 P.2d 889, 896–97 (Okla. 1998), which requires Plaintiffs prove Keating and Nelson were "acting contrary to the business interest of [their] employer and in furtherance of [their] own, personal interests." *See Coleson v. Feed the Children, Inc.*, Case No. CIV-22-191-R, 2022 WL 2655800, at *3–4 (W.D. Okla., 2022) (Russell, J.) (dismissing tortious interference claim because there were no allegations that defendant acted in furtherance of personal interests). Plaintiffs fail to meet this burden.

### a. Plaintiffs failed to present evidence that Keating and Nelson knowingly violated the law.

Plaintiffs assert that by carrying out Stitt's removal order, Keating and Nelson knowingly violated Oklahoma state law, which can never be in the State of Oklahoma's

business interest. Dkt. No. 71 at *16-17, 23. Plaintiffs assert Stitt lacked the authority to remove Plaintiffs and was obligated to offer Rhoades and Harrell their prior positions within the agency. *Id.* at *16. Suffice it to say, Defendants disagree with Plaintiffs' legal conclusions[1], but resolving these ultimate legal questions is unnecessary for summary judgment. What matters is whether Keating or Nelson *knew* or *believed* at the time that they were acting unlawfully[2], and Plaintiffs present no evidence Keating or Nelson did anything besides follow what they reasonably believed was the Governor's lawful order.

To claim that Keating and Nelson "knowingly violated state law," Plaintiffs submit "Additional Facts Precluding Summary Judgment" Nos. 3-5, which cite to Keating's and Nelson's depositions.[3] Dkt. No. 71 at *23. But that testimony fails to support the proposition for which it is offered. Keating and Nelson were asked, in the abstract, if they were aware of any restrictions on the Governor's authority to hire and fire State employees, and they acknowledged that generally, such restrictions may exist. They never testified that any specific restrictions applied to prohibit the Governor's removal of Plaintiffs, nor did they testify that their actions involving Plaintiffs' separation from employment were unlawful in any regard. Plaintiffs offer no other evidence that Keating and Nelson knowingly violated state law. As this is the sole basis provided for Plaintiffs' assertion that Keating and Nelson

---

[1] Stitt adequately explained his authority to remove each of the Plaintiffs. Dkt. No. 51, at *29-23 (Stitt's motion for summary judgment) and Dkt. No. 56 at *8 (Stitt's reply).

[2] *Martin*, 1998 OK 127, ¶ 33, 975 P.2d 889, 897) ("[I]nterference with contract tort is not designed to protect against an employee acting in good faith but using poor business judgment . . . Acting in good faith and using poor business judgment are not mutually exclusive.")

[3] Plaintiffs also reference Simpson's deposition where she opines on her understanding of the legal limits on a cabinet secretary's authority. Her testimony cannot be used to prove what either Keating or Nelson knew or understood about the law.

acted contrary to the interests of the State of Oklahoma (Dkt. No. 71 at *16-17), Plaintiffs cannot satisfy the exception in *Martin*.

**b. Plaintiffs' are not entitled to an inference that Keating was motivated by a desire to curry favor with Gary James.**[4]

Plaintiffs provide no evidence to support their theory that Keating provided negative information about Plaintiffs to Stitt and facilitated Plaintiffs' removal to "curry favor" with Gary James, an attorney with the Oklahoma State Troopers Association. But Plaintiffs provide no evidence of a relationship between Keating and James that would support an inference that Keating would want to help James. Plaintiffs also do not identify any *quid pro quo* between Keating and James, nor do they present any evidence that Keating gained, attempted to gain, or stood to gain anything personally from James by his actions.[5] In this absence, Plaintiffs are not entitled to an inference that Keating acted to "curry favor" with James. *See Coleson*, Case No. CIV-22-191-R, 2022 WL 2655800, at *3–4 ("There are simply no facts alleged that Ms. Moss gained, or attempted to gain, anything personally from participating in Plaintiff's termination.") (dismissing tortious interference claim).

In fact, the only record evidence connecting Keating and James is an April 2019 meeting attended by Keating, James, and Governor Stitt's then-General Counsel Mark Burget, where James raised concerns about Plaintiffs' handling of the German matter. Dkt. No. 71-4, 85:4–18. That meeting resulted in Keating inquiring of Simpson, who assured him the

---

[4] Plaintiffs improperly cite as fact their own self-serving speculation about Keating's motivations. *See, e.g.*, Pls.' Statement of Fact No. 18 (citing to Rhoades' testimony). At summary judgment, such conclusory and speculative "evidence" must be disregarded. *Dawson v. Litton Loan Servicing, LP*, 680 Fed.Appx. 662, 664 (10th Cir. 2017).

[5] Inexplicably, Plaintiffs have neither named as a party nor deposed James in this lawsuit, despite him being the mastermind of their alleged "cover-up."

investigation of the German matter was being handled appropriately. Dkt. No. 63-4, 97:1–24. Keating's presence at this meeting, which pertained to personnel issues at DPS that fell within Keating's statutory duties, fails to support an inference of personal motivation. 74 Okla. Stat. § 10.3(B)(1). The Governor's counsel's presence at the meeting further supports that Keating attended in an official, rather than personal, capacity.

**c. Plaintiffs' are not entitled to an inference that Keating was motivated by a desire to protect Tim Tipton.**

Plaintiffs theorize that Keating conspired to oust Plaintiffs from their positions to prevent Plaintiffs from punishing Tipton for alleged wrongdoing in the German matter. Plaintiffs' factual submissions on this issue, accepted as true for purposes of this Motion, are: that the internal investigation of Rhoades' blackmail allegations against German implicated Tipton in wrongdoing, that Plaintiffs placed Tipton on administrative leave because of this alleged wrongdoing, and that Simpson was preparing a letter of reprimand against Tipton when she was terminated. Plaintiffs again fail to present evidence supporting their theory. As with James, Plaintiffs do not present any evidence that Keating and Tipton had any sort of relationship beyond being acquainted through the Highway Patrol. Likewise, there is no evidence Keating or Nelson knew Simpson was purportedly drafting a letter of reprimand to Tipton. Nor is there evidence that after Plaintiffs' removal, either Keating or Nelson did anything to remove Tipton from administrative leave or reinstate him to work.

Finally, Tipton's appointment as DPS Commissioner more than two years after Plaintiffs' removal fails to support an inference of personal motive by Keating. Plaintiffs submit no evidence that Keating had any involvement in Tipton's appointment as DPS Commissioner. (Keating was no longer cabinet secretary at the time). Scully served as DPS

Commissioner for over two years after Rhoades retired, undermining any assertion by Plaintiffs that Keating facilitated Rhoades' removal to replace him with Tipton.

**d. Plaintiffs are not entitled to an inference that Keating and Nelson were motivated by "political patronage."**

The political patronage cases cited by Plaintiffs do not apply here. In both *Gann v. Cline* and *Mason v. Okla. Turnpike Auth.*, the plaintiffs alleged they were terminated due to their political views, in violation of their rights under the First Amendment. "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1450–51 (10th Cir. 1997).

Plaintiffs have not brought a First Amendment claim, and they have failed to present any evidence that would support the conclusion they were retaliated against based on their political beliefs or affiliation or non-affiliation with any political party. Unlike in *Gann,* there is no evidence Plaintiffs were removed because they did not support Stitt's campaign and were replaced by people who did. Unlike in *Mason,* there is no evidence Plaintiffs were removed "to make room for a person with political sponsorship the [Plaintiffs] lacked." Plaintiffs have not, for example, presented any evidence that Tipton was favored by Stitt at the time of Plaintiffs' removal, that any of the Defendants demanded Plaintiffs remove Tipton from administrative leave or reinstate him, or that Stitt's removal of Plaintiffs was immediately preceded by Tipton/James making a campaign contribution to Stitt (all of which, or similar, happened in *Mason*).

Plaintiffs are left asserting, without evidence, that Keating and Nelson are "lifetime political figures" and therefore "*may* have sought to curry favor" with elected officials, Stitt,

Hunter, and/or Prater. Dkt. No. 71 at *19-20 (emphasis added). To what end, though? Plaintiffs do not say. This nebulous theory of political favoritism is based on rank, unsupported speculation and does not merit submission to a jury.

**e. Plaintiffs are not entitled to an inference that Nelson was motivated by a desire to keep his job or maintain health insurance for his wife.**

Faced with the prospect of summary judgment, Plaintiffs assert, for the first time, that Nelson supposedly knew he was violating the law when he followed Stitt's order but went along anyway to keep his job as deputy secretary and to maintain health insurance for his wife. That Plaintiffs stoop to bringing up Nelson's wife—who is dying from early onset Alzehimers disease, and due to the progression of her disease, cannot materially benefit from health insurance—speaks volumes about the weakness of their case. But desperate as Plaintiffs may be, their new theory crumbles under even the lightest scrutiny.

First, no evidence exists supporting Plaintiffs' premise that Nelson knew or believed he was violating the law. *See supra*, Section I(a). What's more, Plaintiffs present no evidence that Nelson was concerned about, or actually at risk of, losing his position if he failed to follow Stitt's order. There is, for example, no evidence Nelson was threatened with dismissal if he did not obey the Governor's order, or that he was promised he could keep his position if he carried it out. Absent any such evidence, there is no basis to infer Nelson carried out the responsibilities that were delegated to him in order to keep his position.

As for Nelson's wife, Plaintiffs submit no evidence that Nelson was ever at risk of losing his state-issued health insurance if he did not follow Stitt's directive or that Nelson's wife even benefited from the insurance in the first place. There is simply no evidence supporting the conclusion that Nelson helped cause Plaintiffs' removal "for any reason other

than to comply with an order from [his] superior." *Muhammad v. Hall*, No. CIV-15-59, 2015 WL 4078145, at *4 (W.D. Okla. 2015) (Russell, J.) (dismissing claim that defendant improperly withdrew her recommendation for plaintiff's employment, finding the Governmental Tort Claims Act required dismissal absent allegations of bad faith).

Because Plaintiffs are not entitled to an inference that Keating or Nelson acted in furtherance of their own personal interests, as required for the *Martin* exception to apply, the Court can end its analysis here and grant summary judgment.[6]

## II. Plaintiffs are not entitled to an inference that Keating and Nelson acted in bad faith.

Plaintiffs' tortious interference claim also fails if they do not present evidence of bad faith.[7] "Public officials are presumed to have discharged their duties correctly, lawfully, and in good faith." *See BioFunction, LLC v. U.S.*, 92 Fed.Cl. 167, 171 (Fed. Cl. 2010). To the extent Plaintiffs allege Defendants acted in bad faith by carrying out Stitt's removal order, their argument should be rejected because there is no evidence that Defendants knew or believed the order was unlawful. *See supra*, Section I(a).[8]

Plaintiffs are left pointing to Keating forwarding information about Plaintiffs to Stitt

---

[6] *Coleson*, No. CIV-22-191-R, 2022 WL 2655800, at *3–4 (dismissing tortious interference claim); *Wittmer v. Thomason*, 2021 WL 849981, at *8 (E.D.Okla., 2021) (granting summary judgment on tortious interference claim); *Graham v. Cargill, Inc.*, No. CIV-10-0977-HE, 2011 WL 5429316, at *3-4 (W.D. Okla. 2011) (same); *see also Cowdrey v. Allen*, 05-CV-461 TCK PJC, 2006 WL 3241381, at *11 (N.D. Okla. Nov. 7, 2006) (same).

[7] *See Tuffy's, Inc. v. City of Okla. City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165 (explaining an essential element of a tortious interference claim is "malice," which is "an unreasonable and wrongful act done intentionally, without just cause or excuse" that "requires a showing of bad faith").

[8] Even if the Court somehow finds Keating or Nelson violated state law in performing their assigned duties, that is not per se bad faith. *BioFunction, LLC*, 92 Fed.Cl. at 171.

that Keating received from Hunter and Prater. No inference of bad faith can be drawn from this action. Keating was fulfilling his statutory duty to advise the Governor of "problems" within the agencies in his cabinet area. 74 Okla. Stat. § 10.3(B) (emphasis added).

Plaintiffs complain Keating did not do enough to ensure the accuracy of the information before forwarding it to the Governor. *E.g.*, Dkt. No. 71 at *21. This conveniently ignores the source and substance of the information Keating received from Hunter and Prater and that the information, taken as true, would reasonably be concerning to Keating. UMF Nos. 7–9. Plaintiffs instead seek to disparage Hunter and Prater as unreliable, but their efforts fall flat. Defendants submit it was facially reasonable to rely on Hunter (then-Attorney General) and Prater (then-District Attorney for Oklahoma County) for accurate statements.

Plaintiffs attempt to discredit Hunter based on his fall from grace, apparently due to marital issues. But this occurred *after* Plaintiffs' separation from employment. Plaintiffs cannot second-guess Keating's reliance on Hunter based on hindsight and gossip.

As for Prater, Plaintiffs assert that he was unreliable because his "only source of information about the Plaintiffs came from Mr. [Gary] James." Dkt. No. 71. Plaintiffs know this is false. Prater's assessment of Plaintiffs and their involvement in the German matter was based on his own first-hand experience meeting **with Plaintiffs** in December 2018, at a meeting requested by Plaintiffs. UMF No. 8. From that meeting, Prater concluded, among other things, that Plaintiffs were not being truthful about Troy German. Prater shared his assessments of Plaintiffs with Nelson, who shared it with Keating. UMF Nos. 8–9.

Plaintiffs assert Keating should have made "it clear to the Governor that the information presented was the opinion of someone with a clear agenda and has not been verified." Dkt. No. 71 at *21. It is unclear whose agenda or to what agenda Plaintiffs are

referring but presumably they mean Gary James. But, Plaintiffs fail to present evidence that James was the source of the information that Hunter and Prater provided to Defendants, much less evidence that Defendants knew James was the source. Nor do Plaintiffs produce evidence that Defendants had reason to believe James had "an agenda" warranting further scrutiny.[9]

Even if the Court concludes Keating and Nelson should have done more to fact-check the information Hunter and Prater provided, this failure constitutes mere negligence, not bad faith. The law is well-established that "[a]cting in good faith and using poor business judgment are not mutually exclusive." *Angove v. Williams-Sonoma, Inc.*, 70 Fed. Appx. 500, 510 (10th Cir. 2003); *Verniero v. Air Force Academy School Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983) (stating the district court does not "act as a super personnel department"). The Response completely ignores these legal authorities.

Because bad faith is required to show malice, an essential element of Plaintiffs' tortious interference claim and Plaintiffs are not entitled to an inference of bad faith, summary judgment is proper. Similarly, because Defendants have protection under the Governmental Tort Claims Act absent bad faith, summary judgment is proper on that basis too.[10]

## III. Plaintiffs have failed to present evidence that Keating or Nelson spread false reports about Plaintiffs and REAL ID to Governor Stitt.

Plaintiffs prefer to talk about REAL ID instead of the other reasons that Stitt ordered their removal, notably, the information provided by Hunter and Prater. The problem pointing

[9] Plaintiffs allege James used Tipton as an expert witness in his use of force cases, but they fail to present any evidence that Defendants knew of this relationship.

[10] 51 Okla. Stat. § 152(12). Plaintiffs incorrectly assert that whether an employee is acting within the scope of his employment is always a jury question. While scope questions are generally left to the finder of fact, summary judgment is proper when "only one reasonable conclusion can be drawn," as is the case here. *Tuffy's, Inc.*, 2009 OK 4, ¶ 14, 212 P.3d at 1165.

to REAL ID is that Plaintiffs fail to present any evidence that Keating or Nelson actually provided false reports about Plaintiffs and REAL ID to Governor Stitt. Instead, the record shows that the Governor formed his own opinions about Plaintiffs and REAL ID. UMF Nos. 14–15. Thus, any claim against Keating and Nelson premised on REAL ID must fail.

Plaintiffs are not entitled to an inference that REAL ID was a "pretext" for their removal. Defendants were not alone in believing REAL ID was behind under Plaintiffs. Other members of Stitt's cabinet, as well as Plaintiffs' subordinates at DPS had reached the same conclusion. UMF No. 16. Plaintiffs, themselves, admit Stitt was frustrated with them about REAL ID. Rhoades and Simpson testified about attending a meeting in the summer of 2019 at the Governor's mansion, where Stitt expressed his displeasure with Plaintiffs' progress on REAL ID and told them to go faster, contradicting their assertion that they first heard concerns about REAL ID shortly before their employment ended. UMF No. 15.

Plaintiffs' attempt to create a fact dispute over REAL ID benchmarks and whether they were met is unavailing because it does not matter whether Stitt's opinions were accurate—only that they were genuine. Plaintiffs submit no evidence they were not; on the contrary, the evidence presented shows Plaintiffs simply disagreed with Stitt's assessment.

## IV. Keating and Nelson are entitled to summary judgment on Harrell's claim.

Defendants should also be granted summary judgment on Harrell's due process claim for the reasons set forth in Stitt's summary judgment motion. If the Court grants Stitt's motion (which it should), that ruling should inure to their benefit for the same reasons.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered.

Dated this 1st day of March, 2023.

Respectfully submitted,

*s/ Michael A. Duncan*
W. Kirk Turner, OBA # 13791
Jacob S. Crawford, OBA # 31031
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone (918) 587-0000
Facsimile (918) 599-9317
kirk.turner@mcafeetaft.com
jake.crawford@mcafeetaft.com

Ronald T. Shinn Jr., OBA # 19569
Michael A. Duncan, OBA # 32382
MCAFEE & TAFT A PROFESSIONAL CORPORATION
211 North Robinson, 8th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
ron.shinn@mcafeetaft.com
alex.duncan@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March, 2023, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. Based on the records currently on file, the Court will transmit a Notice of Electronic Filing to all those registered with the ECF system for filing.

*s/ Michael A. Duncan*
Michael A. Duncan