IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY D. "RUSTY' RHOADES III, ) <br> an individual; ) <br> MEGAN L. SIMPSON, an individual; ) <br> and MICHAEL S. HARRELL, ) <br> an individual, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> THE STATE OF OKLAHOMA, ex rel. ) <br> GOVERNOR KEVIN STITT; ) <br> THE STATE OF OKLAHOMA, ex rel. ) <br> THE DEPARTMENT OF PUBLIC ) <br> SAFETY; ) <br> KEVIN STITT, an individual; ) <br> CHIP KEATING, an individual; ) <br> JASON NELSON, an individual; and ) <br> JOE CLARO, an individual, ) <br> ) <br>       Defendants. ) | No.  CIV-20-761-R |

## ORDER

Before the Court is the Motion for Summary Judgment (Doc. No. 50) filed by Defendant Governor Kevin Stitt, in his individual capacity.[1] Plaintiff Harrell responded in opposition (Doc. No. 54) and Defendant Stitt filed a Reply in support of his motion. (Doc. No. 56). Upon consideration of the parties' submissions, the Court finds as follows.

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.

---

[1] Defendant's Motion does not comply with Local Civil Rule 56.1 The Court has limited its factual consideration to the facts set forth in the Statement of Undisputed Material Facts to the extent those facts are supported by the cited evidence.

Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322.

This case arises from the separation of Plaintiff Harrell as Colonel of the Oklahoma Highway Patrol in September 2019. Defendant Jason Nelson, via authority granted him by the Governor, notified Plaintiff by telephone of three options—he could either resign, retire, or be terminated.[2] Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that Defendants Stitt, Keating, and Nelson violated his constitutional rights—specifically his due process rights under the Fourteenth Amendment. Defendant Stitt seeks summary judgment on Plaintiff's constitutional claims, arguing the absence of factual disputes, and that he is entitled to prevail on the merits.[3] He further asserts the defense of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[2] According to the transcript of the telephone call the Governor delegated the authority to Nelson and directed him to notify Plaintiff Harrell of his options. Nelson recited to Plaintiff that the Governor had filed a sworn statement "declaring that, as the appointing authority for the Commissioner of the Department of Public Safety, that you are unable to effectively lead the Department of Public Safety." (Doc. No. 50-16, p. 2). Plaintiff later noted that he was not in charge of that Department. *Id.*

[3] Defendants Keating and Nelson have adopted Defendant Stitt's motion for summary judgment as part of their combined motion for summary judgment, which is addressed by separate order.

known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017)(per curiam)(internal quotation marks and citation omitted).

When a defendant, such as Governor Stitt, raises the qualified immunity defense at the summary judgment stage the burden shifts to Plaintiff to meet a strict two-part test. First, Plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right; and second, he must show that the constitutional or statutory rights allegedly violated were clearly established at the time of the conduct at issue. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). The two issues may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, (2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

The Court addresses the two prongs in the order set forth above, first asking whether the evidence, when construed in the light most favorable to Plaintiff, establishes the deprivation of his due process rights. The Fourteenth Amendment prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.[4] The principle of due process "requires 'some kind of a hearing' prior

---

[4] From Plaintiff's Complaint it is not apparent whether he intended to pursue both substantive and procedural due process claims. In response to the motion for summary judgment Plaintiff presents limited argument on the issue of substantive due process, Doc. No. 54, p. 21. The Court finds as a matter of law that Plaintiff cannot proceed on such a claim because the Tenth Circuit has never recognized a substantive due process right in state-created employment, and therefore the right could not be clearly established. *Roberts v. Winder*, 16 F.4th 1367, 1375 (10th Cir. 2021)("Alternatively, Defendants are entitled to qualified immunity because Roberts' substantive due process right was not clearly established. *Potts v. Davis Cnty*, 551 F.3d 1188, 1196 n.1 ('We have not decided whether an employee with a property right in state-created employment is protected by the substantive due process clause.'))." Furthermore,

3

to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, (1985)(quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972)). To be entitled to procedural due process, Plaintiff must demonstrate that he had a protected property interest. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Here Plaintiff was not given a hearing, and accordingly the threshold issue is whether Plaintiff Harrell has established a property interest sufficient to trigger the Due Process Clause.

"The existence of "a sufficient property interest in … employment is a matter of state law." *Calhoun v. Gaines*, 982 F.2d 1470, 1474 (10th Cir.1992)(citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Archer v. Sanchez*, 933 F.2d 1526, 1529 (10th Cir.1991)). A property interest may be created by "[s]tatutes, ordinances, contracts, implied contracts, as well as rules and policies developed by governmental officials." *Simmons v. Uintah Health Care Special Service Dist.*, 364 F. App'x 507, 515 (10th Cir. 2010) (citing *Calhoun v. Gaines*, 982 F.2d 1470 (10th Cir. 1992)).[5] Here there are two separate positions to be addressed—Plaintiff's position as Chief of the Highway Patrol, the position held at the time of termination—and the position of Major with the Patrol, the position Plaintiff held prior to ascending to the position as Chief.

Okla. Stat. tit. 47, § 2-105 mandates that the Commissioner of Public Safety appoint:

---

the Court need not devote substantial discussion to the substantive due process claim in the absence of a developed argument by Plaintiff.

[5] To the extent Plaintiff relies on the procedures set forth in Okla. Stat. tit. 47 § 2-105(D) to support his contention of a property right, property rights are not defined by procedures. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985); see *also, Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) ("This court has explained it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest.") (internal quotation marks omitted).

> A Chief of the Oklahoma Highway Patrol Division with the rank of Colonel, Deputy Chiefs of the Oklahoma Highway Patrol Division with the rank of Lieutenant Colonel, and subordinate officers and employees of the Oklahoma Highway Patrol Division, including Majors, Captains, Lieutenants, and Highway Patrolmen with the rank of Trooper, who shall comprise the Oklahoma Highway Patrol Division of the Department of Public Safety; provided, any officer appointed to a commissioned position prescribed in this paragraph which is unclassified pursuant to Section 840-5.5 of Title 74 of the Oklahoma Statutes **shall have a right of return to the highest previously held classified commissioned position within the Oklahoma Highway Patrol Division of the Department of Public Safety without any loss of rights, privileges or benefits immediately upon completion of the duties in the unclassified commissioned position**. . . .

Okla. Stat. tit. 47 § 2-105(A)(1)(emphasis added). As to the position of Chief, the job occupied by Plaintiff Harrell until September 2019, the Court finds that he did not possess a property right in continued employment.[6] Okla. Stat. tit. 74 § 840-5.5 identifies this position as unclassified and such positions do not create an expectation of continued employment.[7] "In terms directly relevant to the due process inquiry, an unclassified position 'shall not convey any right or expectation of continued employment.' Okla. Stat. Ann. tit. 74, § 840–5.1A(A)" *Trant v. Oklahoma*, 426 F. App'x 653, 663 (10th Cir. June 15, 2011).[8] Therefore, Plaintiff cannot rely on his continued employment in that capacity as the basis for a property interest.

Plaintiff contends, however, that the portion of § 2-105 highlighted above provided him with a property right in continued employment as a classified employee, specifically the rank of major, when he was relieved of the duties as Chief. The "right of return" is

---

[6] Plaintiff does not directly argue that he had a continued property interest in the position as Chief of the Oklahoma Highway Patrol. Defendant, however, addresses the issue, and accordingly, the Court finds it necessary to address whether that position supports a due process claim by Plaintiff Harrell.

[7] Section 840.5.5 was repealed in 2022 with the modification of the State's merit protection system.

[8] This section was similarly repealed in 2022.

clearly indicated in the plain language of the statute, which permits the Chief to reassume the highest previously held classified commissioned position. Section 2-105(A)(1) and its unequivocal reversionary right are in contrast to Okla. Stat. tit. 47 § 2-102(D), which provides that any DPS employee appointed to the position of Commissioner "shall have the ability to return to the previous position of the employee without any loss of rights, privileges or benefits, immediately upon completion of the duties as Commissioner, provided, the employee is not otherwise disqualified due to disciplinary reasons, termination of employment, or inability to effectively lead the agency." The Commissioner's right to revert is conditional, but no such conditions apply to the positions identified in § 2-105(A)(1), to include the Chief of the Highway Patrol. Accordingly, the Court concludes that based on state law Plaintiff Harrell had a protected property interest in the position of Major with the Oklahoma Highway Patrol upon completion of his duties as Chief.

     Even if Plaintiff provides evidence to support the conclusion that Defendant violated his constitutional rights, he bears the burden of showing that his rights were clearly established at the time of the violation. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(citation omitted). Even without "a case directly on point" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), a right may be clearly established. "[A] reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). The inquiry "is whether it would have been clear to a reasonable [official in the

defendant's] position that [his] conduct was unlawful in the situation [he] confronted." *Wood v. Moss*, 572 U.S. 744, (2014)(brackets, internal quotation marks, and citation omitted). Here, the broad right in question—notice and an opportunity to be heard prior to deprivation of a property right—was clearly established in 2019, when Plaintiff was separated from the Highway Patrol. *See Loudermill*, 470 U.S. at 542-46. The more nuanced question is whether it was clearly established that the Oklahoma statute upon which Plaintiff relies, Okla. Stat. tit. 47 § 2-105, gave Plaintiff a property right to continued employment with the Highway Patrol.

In support of his request for qualified immunity Defendant Stitt argues that it is "debatable that 47 Okla. Stat. § 2-105 gave Harrell a property interest, given the Governor's authority to remove purely executive officers and the fact that those removals are not subject to judicial review." (Doc. No. 50, p. 39). Defendant contends his interpretation of § 2-105 was reasonable, in part due to the absence of any cases interpreting the statute.

Defendant cites *to Derda v. City of Brighton, Colo.*, 53 F.3d 1162 (10th Cir. 1995). Therein the court considered whether a Colorado statute created a protected property interest in continued employment and concluded that it was unclear whether the statute intended to confer on employees an interest in continued employment. "Given the uncertainty concerning the interpretation of section 31-4-211(2), we conclude that [plaintiff] has, at a minimum, failed to establish . . . that any right violated was clearly established at the time she was terminated." Id. at 1166. The statute had been twice interpreted by the state court but with differing outcomes. Here, there are no competing interpretations.

The absence of any interpretations of the statute by courts does not mandate the granting of qualified immunity.

> The fact that a statute has not been construed does not mean that there is no law, that anything goes. There is always the statute itself, and if its meaning is clear without benefit of judicial interpretation the officials enforcing it cannot reasonably go against it. *Andreu v. Sapp*, 919 F.2d 637, 643 n. 6 (11th Cir.1990).
>
> ***
>
> In short, when a proposed statutory interpretation is arguable, the plaintiff cannot rebut the defense of immunity without showing that the argument has been authoritatively resolved, but when the proposed interpretation is cockeyed, no such showing is required. *Andreu v. Sapp*, supra, 919 F.2d at 643; *cf. Scott v. Glumac*, supra, 3 F.3d at 167.

*Northen v. City of Chicago*, 126 F.3d 1024, 1028 (7th Cir. 1997). The Court does not find the above-quoted statutory language from § 2-105 debatable or ambiguous.

Furthermore, to the extent Defendant Stitt relies on his perceived authority to remove all executive officers without judicial review, a position accepted by the Court with regard to Plaintiff Rhoades in his capacity as Commissioner of Public Safety, Plaintiff Harrell occupies a different place in the scheme of state government. Plaintiff Rhoades was appointed by the Governor and pursuant to statute served at his will. The Governor's statutory power under Title 74 § 2 permits removal of officers appointed by the Governor for "incompetency, neglect of duty, or malfeasance in office." These provisions prevented Plaintiff Rhoades from establishing the existence of a property right to continued employment in that position, but do not apply to Plaintiff Harrell, who by statute was appointed by the Commissioner. Despite the statutory dictate that "[t]he Governor shall be the chief officer of the Department of Public Safety," Okla. Stat. tit. 47 § 2-101(b), the statute also provides that the "Department . . . shall be under the control and supervision of

the Commissioner of Public Safety.[9] Accordingly, the Court does not read any of the Defendant's cited statutes as granting the Governor unlimited authority to remove any official serving an executive function. In light of the unambiguous language of § 2-105(A)(1) Defendant Stitt is not entitled to qualified immunity on this basis. The next inquiry is whether Defendant Stitt deprived Plaintiff of his rights without due process.

Defendant argues that no deprivation occurred because Plaintiff resigned from his position and he testified that he was aware of his right to revert to his prior classified position but he failed to assert such right, thereby relinquishing his property interest in continued employment.[10] If an employee voluntarily relinquishes a property interest, then no procedural due process violation has occurred. *Yearous v. Niobrara C'nty Mem. Hosp.*, 128 F.3d 1351, 1355 (10th Cir.1997). As noted by the court in *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159 (1992):

> The law in effect at the time of plaintiff's resignation indicates that the voluntariness of the decision to resign is determinative of whether qualified immunity would bar this action. If she resigned of her own free will, even though doing so due to the actions of defendants, she voluntarily relinquished her property interest and was not deprived of her property interest without due process. *See Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988). If, however, her resignation was so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process.

*Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992).

---

[9] Section § 2-102(A)(1) reiterates this control, providing, "The Department shall be under the control of an executive officer to be known as the 'Commissioner of Public Safety.'"

[10] To the extent Plaintiff complains that he was not provided the statutory process set forth in Okla. Stat. tit. 47 § 2-105, the due process clause does not mandate that the employer follow state procedural rules. Rather, the process due is defined by the Constitution. *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir.2003)("in deciding whether a state has violated a person's constitutional right to procedural due process, [courts] should pay no attention to whether the state has complied with procedures mandated by state law.").

Plaintiff argues that his retirement was involuntary because he was presented with three options by Defendant Nelson via telephone: termination, resignation, or retirement—if eligible. A resignation or retirement will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice *Stone*, 855 F.3d at 174.

> We apply "an objective test under which neither [Plaintiff's] subjective views of the situation, nor [the Governor's subjective intent ... are relevant." *Tran,* 355 F.3d at 1270. The plaintiff has a substantial burden to prove a constructive discharge claim, *Strickland,* 555 F.3d at 1228, and "[w]hether a constructive discharge occurred is a question of fact," *id.* (citing *Arnold v. McClain,* 926 F.2d 963, 966 (10th Cir.1991)). As the district court pointed out, factors that we consider in determining whether there was a constructive discharge include "(1) whether [Plaintiff] was given some alternative to resignation; (2) whether [Plaintiff] understood the nature of the choice he was given; (3) whether [he] was given a reasonable time in which to choose; and (4) whether [Plaintiff] was permitted to select the effective date of resignation." *Parker v. Bd. of Regents of Tulsa Jr. College,* 981 F.2d 1159, 1162 (10th Cir.1992) (internal quotation marks omitted). Although these four factors are not necessarily determinative when there is no explicit forced choice between resignation and termination, they are nonetheless informative. *See Lighton v. Univ. of Utah,* 209 F.3d 1213, 1223 (10th Cir.2000). Ultimately, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate [the lack of an] opportunity to make a free choice." *Parker,* 981 F.2d at 1162.

*Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trustees*, 610 F.3d 558, 565–66 (10th Cir. 2010). Here, in part because Plaintiff was given three choices, Defendant argues that he was not involuntarily terminated.

The Court first notes that in offering Plaintiff three options Defendant Nelson omitted the option available to Harrell via statute, a position that would have entitled Plaintiff to a pre-termination due process hearing. Defendant argues there was no

10

obligation to inform Plaintiff of the option to continue his employment in a classified position, as Harrell testified that he was aware of the option. However, from the evidence it is apparent that Defendant intended that Plaintiff Harrell would be removed from the Highway Patrol entirely, as his credentials were immediately revoked as was his access to his office.[11] Thus it does not appear that Plaintiff Harrell had any forum in which he could stay and fight for his continued employment by challenging the factual basis of the separation decision. Furthermore, as noted by the Ninth Circuit under somewhat similar circumstances, "[t]he due process violation was the failure of the defendants to inform the plaintiff of his right to bump into the job of gym director or night clerk." *Alexander v. City of Menlo Park*, 787 F.2d 1371, 1375 (1986). Furthermore, "[a] decision made 'with blinders on' based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process." *Covington v. Department of Health and Human Servs.,* 750 F.2d 937, 943 (1984).

Although the caselaw broadly states that the choice between termination and resignation/retirement does not render the choice involuntary, the actual facts of those cases generally do not resemble the facts of this case. For example, in *Parker*, the Plaintiff chose to resign in lieu of facing termination proceedings, proceedings that would have provided her with due process. That combined with the fact that there was an objective basis for seeking her termination—she had hired her daughter who lacked the necessary credentials—led the court to conclude that Ms. Parker had chosen to forego her rights. "A

---

[11] Defendant Nelson advised Mr. Harrell during the September 2, 2019, telephone call that his access credentials and keys had been disabled and the contents of his office secured. Doc. No. 50-16, p. 2.

choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination." *Parker*, 981 F.2d at 1162. Plaintiff was not advised of any opportunity for a hearing of any sort nor of any opportunity to retain employment in any capacity with the Highway Patrol. Furthermore, he alleges the lack of an objective basis for his termination because he was not responsible for the implementation of REAL ID, the after-the-fact rationale for his termination.

Although certain of the factors weigh in favor of finding that Plaintiff Harrell's decision to resign, including the fact that Plaintiff immediately made his retirement decision when presented with the alternatives and the fact that there is no evidence that he did not understand his choices when they were originally presented to him, a reasonable jury could find under the totality of the circumstances that the decision was not voluntary.[12] Most notably, the record is devoid of evidence as to why the actual decisionmaker—Defendant Stitt—decided to terminate Plaintiff Harrell.[13] In short, the Court finds that there are genuine issue of material fact with regard to whether Plaintiff voluntarily relinquished

---

[12] Defendant argues that Mr. Harrell was permitted to choose his final day of employment. Mr. Harrell, however, never returned to his position as Chief of the OHP, rather, he requested "to use terminal leave through November 30, 2019] as provided for by our agency" and started his retirement benefits on December 1, 2019. Doc. No. 50-17, p. 1.

[13] Governor Stitt responded to Plaintiff's interrogatories by indicating that "he has no specific recollection but generally recalls lacking confidence in the DPS leadership team, which included Michael Harrell." (Doc. No. 50-23, p. 6). To that end, there is currently pending before the Court a Motion to Quash directed at Plaintiff's attempt to depose Governor Stitt. Because granting of the instant motion would have obviated any need for a deposition, the Court has not yet ruled on the motion. Furthermore, because the Court's denial of qualified immunity is subject to interlocutory appeal by Defendant Stitt, the Court will grant Defendant seven days in which to indicate whether he intends to file an interlocutory appeal before considering the Motion to Quash. Should Defendant opt to appeal immediately the Court will continue to hold the motion in abeyance pending the outcome of any such appeal.

his property right in maintaining employment with the Oklahoma Highway Patrol as a major by choosing retirement on September 2, 2019.

For the reasons set forth above, the Court finds that Defendant Stitt is not entitled to qualified immunity because it was clearly established at the time of Plaintiff Harrell's separation that he had a statutory right of reversion thereby creating a property right in his continued employment with the Oklahoma Highway Patrol. Furthermore, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether his decision to retire was voluntary or coerced, that is whether Defendant Stitt deprived him of his property interest without due process. Accordingly, for the reasons set forth herein, Defendant Stitt's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED** this 30th day of March 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE